JOURNAL ENTRY AND OPINION
{¶ 1} Defendant Virgil Jones (appellant) appeals his convictions for aggravated murder and aggravated burglary. After reviewing the facts of the case and pertinent law, we affirm.
 I. {¶ 2} On November 30, 2004, a group of people, including Annie Brown (Annie) and Booker Burks (Booker), were at Calvin Langford's (Skinny) house in Cleveland. At one point, Booker apparently took appellant's white mountain bike without permission and left Skinny's house. The next day, December 1, 2004, appellant discovered that his bike was missing and learned "through the grapevine" that Booker was seen riding it. Appellant dressed in dark clothing, put a gun in the waist of his pants, and headed to Annie's house, where he thought he would find Booker. When appellant arrived at Annie's house, 2666 East 68th Street in Cleveland, he found Annie and her boyfriend Emmanuel Mustin (Emmanuel), who knew that appellant was looking for Booker and that appellant regularly carried a gun. Appellant entered the house and stated, "Where that nigger at with my bike?" Annie and Emmanuel got up to leave the house, and Emmanuel heard the sound of a door breaking in the front room and then heard two gunshots.
 {¶ 3} Annie and Emmanuel ran out of the house and went in opposite directions. A moment later, Emmanuel heard a single gunshot. Emmanuel headed back toward the house and saw appellant pedaling toward him on the bike. *Page 4 
According to Emmanuel, appellant approached him and, when they were face to face, stated, "I just killed both of them. And if you say my name come up, I'm gonna kill you."
 {¶ 4} On December 2, 2004, Lloyd White, who lives in the house next door to Annie's, went to the front door to get the paper and saw someone lying against the fence between the houses. As he approached the person, he saw blood coming out of her ear. Lloyd called 911. The authorities arrived and saw that Annie was dead from a single gunshot wound to the head. The police also found Booker dead inside the house from gunshot wounds to the head and chest.
 {¶ 5} Later on the evening of December 2, 2004, appellant boarded a bus near Euclid and Superior avenues in Cleveland after securing his bike to the rack in front. According to Joseph Dye (Joseph), who was the bus driver and an acquaintance of appellant's, appellant began telling a story about an incident that occurred the day before near East 68th Street and Woodland Avenue. Joseph testified as follows:
 "Well, [appellant] proceeded to tell me that someone had stolen his bike, which was his bike I just identified, and that he had found out who had — he was visiting a friend's house and someone had took his bike out this friend's yard. He found out who — where the bike might possibly be and he went to get it.
 * * *
 "He said he went to the house and he knocked on the door and I think he said a female came to the door. She resisted to let him in and he pushed his way past her. And he proceeded to go to a bedroom where I suppose the guy was in the bedroom. He said that he fired his firearm at him and hit him in the chest once and once in the head area. *Page 5 
 * * *
 "Well, he said it was two more individuals in the house, and I imagine they ran when they heard the first shot. So he said he caught up with the female in the yard and shot her in the head and — and he said he shot the gun at the other guy, but the gun jammed.
 * * *
 "He told me that he had told him if he mentioned anything about the incident, he would come back and kill him."
 {¶ 6} Nadine Murphy, who was riding the same bus as appellant on December 2, 2004, testified that appellant asked her if she heard about the people who were killed on East 68th and Woodland. When she said no, appellant told her about it and said that he was the one who "dismissed" them.
 {¶ 7} On January 25, 2005, appellant was indicted with aggravated murder of Annie and Booker, in violation of R.C. 2903.01; attempted aggravated murder related to Emmanuel; aggravated burglary in violation of R.C. 2911.11; intimidation of Emmanuel in violation of R.C. 2921.04; and various firearm charges and associated specifications.
 {¶ 8} On December 14, 2006, a jury found appellant guilty of murdering Annie and Booker with a firearm, mass murder, felony murder, and murder to escape specifications, intimidating Emmanuel, and committing burglary. Appellant was found not guilty of the attempted murder of Emmanuel. In addition, the court found appellant guilty of carrying a concealed weapon and having a weapon under *Page 6 
disability. On December 20, 2006, the court sentenced appellant to life in prison with the possibility of parole after 33 years.
 II. {¶ 9} In his first assignment of error, appellant argues that "the prosecution's closing remarks commenting repeatedly on Mr. Jones' failure to rebut the state's case as well as those inviting the jury to find either one of two distinct acts as the basis for a particular element constituted misconduct which violated his rights under theFifth, Sixth and Fourteenth Amendments of the Constitution."
 "The test regarding prosecutorial misconduct in closing arguments is whether the remarks were improper and, if so, whether they prejudicially affected substantial rights of the defendant. To begin with, the prosecution must avoid insinuations and assertions which are calculated to mislead the jury. It is improper for an attorney to express his personal belief or opinion as to the credibility of a witness or as to the guilt of the accused. Moreover, the [lawyers' Code of Professional Responsibility] provides that an attorney is not to allude to matters which will not be supported by admissible evidence, DR 7-106(C)(1), and `* * * [a] lawyer should not make unfair or derogatory personal reference to opposing counsel. * * *' EC 7-37."
State v. Smith (1984), 14 Ohio St.3d 13, 14 (internal citations omitted).
 {¶ 10} In addition, pursuant to the Fifth Amendment to the United States Constitution, the government, including the prosecution and the court itself, is forbidden from commenting regarding the accused's right not to testify and "that such silence is evidence of guilt." Griffin v.California (1965), 380 U.S. 609, 615.
 {¶ 11} In the instant case, appellant did not testify nor did he present any witnesses or evidence on his behalf. Appellant argues on appeal that during the state's closing *Page 7 
arguments, the prosecutor improperly referred to this eleven times. For example, the prosecutor made the following remarks: "The only testimony you have before you is that the defendant owned a .32 caliber blue steel revolver"; "That's the trial testimony. Nobody offered anything different. No other witness said anything different"; "Nobody contradicted that. Nobody. That Booker Burks had the defendant's bike."
 {¶ 12} Appellant argues that his case is similar to Girts v.Yanai (2007), 501 F.3d 743, where the Sixth Circuit Court of Appeals held that a prosecutor's repeated closing argument statements regarding the defendant's silence and failure to testify were improper and amounted to prosecutorial misconduct.
 {¶ 13} The state, on the other hand, argues that the instant case is more analogous to State v. Ferguson (1983), 5 Ohio St.3d 160, 163, where the Ohio Supreme Court held that "a reference by the prosecutor in closing argument to uncontradicted evidence is not a comment on the accused's failure to testify where the comment is directed to the strength of the state's evidence and not to the silence of the accused, and the jury is instructed not to consider the accused's failure to testify for any purpose."
 {¶ 14} In the instant case, when charging the jury, the court stated the following: "It is not necessary that the defendant take the witness stand in his own defense. He has a constitutional right not to testify. The fact that the defendant did not testify must not be considered for any purpose whatsoever by the jury." After reviewing the *Page 8 
prosecutor's comments in the instant case, we conclude that they were aimed at the strength of the state's uncontradicted evidence and not on appellant's silence. See, also, State v. Witt (May 14, 1992), Cuyahoga App. No. 60459 (holding that even if a prosecutor's comment was improper, the error is harmless when the state's evidence is overwhelming and "the factfinder would have found the defendant guilty absent the prosecutor's remarks").
 {¶ 15} In the second part of appellant's first assignment of error he argues that the state's closing arguments improperly allowed the jury to find him guilty of aggravated burglary, and, thus, felony murder based on the underlying burglary, based on two alternative factual theories.
 {¶ 16} Pursuant to R.C. 2911.11, to commit burglary, appellant would have had to enter Annie's house by "force, stealth, or deception," with the purpose to commit another offense. Appellant claims that in closing arguments, the prosecutor told the jury it could pick one of two fact patterns demonstrating "force" upon which to base the burglary offense, and that this improper choice may have resulted in a non-unanimous jury verdict. As to the first force theory, Emmanuel testified that although appellant walked into the house because the door was open, he tore down the door to Booker's bedroom before shooting him. Therefore, appellant's forceful entry into the bedroom amounted to burglary. However, Joseph testified that when appellant *Page 9 
confessed to him on the bus, he said that he pushed his way past Annie to get in the house. Therefore, appellant's forceful entry into the house amounted to burglary.
 {¶ 17} United States Supreme Court cases reflect the long established criminal law rule that "it may be alleged in a single count that the means by which the defendant committed the offense are unknown or that the defendant committed it by one or more specified means." Schad v.Arizona (1991), 501 U.S 624, 631 (quoting Fed.R.Crim.P. 7(c)(1)).
 {¶ 18} Additionally, in State v. Gibbs, Cuyahoga App. No. 86126,2006-Ohio-175, we held that a "general unanimity instruction is sufficient to ensure a unanimous verdict on the factual basis for conviction `even where the indictment alleges numerous factual basis for liability.' * * * `The verdict stands if the evidence is sufficient with respect to any one of the acts charged.'" (Internal citations omitted.)
 {¶ 19} Accordingly, there is no evidence of prosecutorial misconduct during closing arguments, and appellant's first assignment of error is overruled.
 III. {¶ 20} In his second assignment of error, appellant argues that he "was deprived of liberty without due process of law, where his convictions for aggravated burglary and felony murder are against the manifest weight of the evidence." Specifically, appellant argues that Emmanuel and Joseph, who were the two most damaging witnesses against him, testified inconsistently with one another in respect to how appellant committed the burglary and the felony murder charges based upon *Page 10 
the burglary. Appellant further argues that the jury must have "selectively and irrationally ignored" Emmanuel's testimony that appellant entered through an open door, while they believed his testimony regarding the shootings.
 {¶ 21} The proper test for an appellate court reviewing a manifest weight of the evidence claim is as follows:
 "The appellate court sits as the `thirteenth juror' and, reviewing the entire record, weighs all the reasonable inferences, considers the credibility of witnesses and determines whether, in resolving conflicts in evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."
State v. Thompkins (1997), 78 Ohio St.3d 380, 387.
 {¶ 22} The state argues that "it was the jury's role in this case whether to believe all, part, or none of each of the witness's testimony." In State v. Antill (1964), 176 Ohio St. 61, 67, the Ohio Supreme Court held the following:
 "The jury is the sole judge of the weight of the evidence and the credibility of witnesses. It may believe or disbelieve any witness or accept part of what a witness says and reject the rest. In reaching its verdict, the jury should consider the demeanor of the witness and the manner in which he testifies, his connection or relationship with the prosecution or the defendant, and his interest, if any, in the outcome."
 {¶ 23} In the instant case, while there was no forensic evidence of appellant's guilt, the witness testimony is overwhelming that appellant burglarized Annie's house and killed both Annie and Booker. Valencia Witherspoon, one of the people at Skinny's house on November 30, testified that when appellant found out that Booker took his bike, appellant dressed in dark clothing, took his gun and left to find Booker. *Page 11 
Emmanuel testified that he saw the events leading up to the shootings, including appellant with a gun in his hand looking for Booker at Annie's house. Emmanuel also heard the three shots fired, and he testified that immediately after the gunfire, appellant told him that he killed Annie and Booker. In addition, Joseph testified that appellant confessed to the two murders the day after the events while riding the bus he was driving. Finally, Nadine testified that appellant told her he "dismissed" two people near East 68th and Woodland the day before.
 {¶ 24} The jury did not lose its way, no manifest miscarriage of justice was created, and appellant's second assignment of error is without merit.
 IV. {¶ 25} In his third assignment of error, appellant argues that he "was deprived of his rights under the Fifth, Sixth and Fourteenth Amendments] of the Constitution because the trial court failed [to] inquire at the close of the defense case whether Mr. Jones knowingly, intelligently and voluntarily waived his right to testify, thereby ensuring that he understood he has the right to testify should he wish to do."
 {¶ 26} In State v. Bey (1999), 85 Ohio St.3d 487, 499, the Ohio Supreme Court held that "a trial court is not required to conduct an inquiry with the defendant concerning the decision whether to testify in his defense." (Emphasis in original.) The Bey court also held that a court's failure to advise or inquire about a defendant's right to testify cannot constitute error. Id. at 500.
 {¶ 27} Accordingly, appellant's third assignment of error is overruled. *Page 12 
 V. {¶ 28} In his fourth and final assignment of error, appellant argues that his "Sixth Amendment right to the effective assistance of counsel was violated where trial counsel failed to object to the prosecution's improper remarks during closing argument."
 {¶ 29} To substantiate a claim of ineffective assistance of counsel, an appellant must demonstrate that 1) the performance of defense counsel was seriously flawed and deficient, and 2) the result of appellant's trial or legal proceeding would have been different had defense counsel provided proper representation. Strickland v. Washington (1984),466 U.S. 668; State v. Brooks (1986), 25 Ohio St.3d 144. In State v.Bradley, the Ohio Supreme Court truncated this standard, holding that reviewing courts need not examine counsel's performance if appellant fails to prove the second prong of prejudicial effect. State v.Bradley (1989), 42 Ohio St.3d 139. "The object of an ineffectiveness claim is not to grade counsel's performance." Id. at 142.
 {¶ 30} Because we determined in appellant's first assignment of error that the prosecutor's closing argument was proper, it necessarily stands that the failure to object to these remarks does not constitute a flawed and deficient performance for the purpose of an ineffective assistance of counsel claim. Appellant's final assignment of error is overruled.
 Judgment affirmed. *Page 13 
It is ordered that appellee recover from appellant the costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to said court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 CHRISTINE T. McMONAGLE, J., and ANN DYKE, J., CONCUR *Page 1