JOURNAL ENTRY AND OPINION *Page 3 
{¶ 1} Appellant Michael Luks appeals his convictions for rape, gross sexual imposition, and kidnapping. He assigns six errors for our review.[1]
 {¶ 2} Having reviewed the record and pertinent law, we affirm Luks' convictions. The apposite facts follow.
 {¶ 3} The Cuyahoga County Grand Jury indicted Luks in a 110-count indictment for rape, gross sexual imposition, and kidnapping, arising from his unlawful sexual acts with his two juvenile nieces. Luks entered a plea of not guilty; the matter proceeded to a jury trial.
 Jury Trial {¶ 4} At the time of trial, the victims were 18 and 13 years old.[2]
They were ten and under when the abuse occurred. Two older nieces also testified regarding Luks; however, the charges pending against Luks did not involve *Page 4 
them.[3] The victims testified that Luks abused them over a period of years in the home they shared with him. Luks would offer them candy in exchange for sexual acts, which consisted of him touching them and performing oral sex on them and they on him.
 {¶ 5} The victims' parents are alcoholics and have ten children between them. The family was constantly moving to different states and within Ohio to escape the various child service agencies that were investigating claims of abuse and neglect of the children.
 {¶ 6} In 1996, the family moved in with the paternal grandmother, where Luks also lived. Between 1996 and 1999, the family repeatedly moved to and from this house in an attempt to evade Cuyahoga County Children and Family Services ("CCDFS"), which had become involved with the family because of reports of neglect and abuse.
 {¶ 7} In January 2005, the minor children were placed in their paternal aunt's custody because their parents refused to comply with the case plan developed by CCDFS. While in the aunt's custody, Victim I told her aunt that Luks had sexually abused her. The aunt refused to report the abuse to *Page 5 
authorities. She also continued to allow the grandmother to babysit the children at the grandmother's house where Luks also resided.
 {¶ 8} Victim I testified that she discovered Victim II's journal in which she alluded to the uncle abusing her. Victim I decided to take action to prevent further abuse of her younger siblings and called the child abuse hotline. As a result, the children were removed from their aunt's custody and placed with foster families.
 {¶ 9} After presenting its case-in-chief, the State dismissed all but ten counts against Luks, consisting of four counts of rape, one count of gross sexual imposition, and three counts of kidnapping, occurring between January 24, 1996 and January 23, 1999 against Victim I; and one count each of gross sexual imposition and kidnapping against Victim II during August 2000.
 {¶ 10} The jury found Luks guilty of all ten counts. The trial court sentenced Luks to four statutorily mandated life-sentences for the rape convictions, five years for the gross sexual imposition counts, and ten years for the kidnapping counts. The court ordered the rape and kidnapping counts to be served concurrently but consecutive to the five years for gross sexual imposition. The trial court also found Luks to be a habitual sex offender.
 Indictment *Page 6 {¶ 11} In his first assigned error, Luks claims the indictments failed to state with specificity when the criminal acts occurred, depriving him of fair notice of the charges, and the opportunity to prepare an adequate defense. We disagree.
 {¶ 12} The Ohio Supreme Court has held that "the failure to provide dates and times in an indictment will not alone provide a basis for dismissal of the charges."[4] The Court explained, "a certain degree of inexactitude of averments, where they relate to matters other than the elements of the offense, is not per se impermissible or necessarily fatal to a prosecution."[5] However, the State must supply specific dates and times regarding an alleged offense when it possesses such information.[6]
 {¶ 13} This court has previously noted that the State may be unable to supply exact times and dates in cases involving victims who are young children. We explained that young children may not be able to remember exact dates, especially when the crimes involve several instances of abuse spread out over an *Page 7 
extended period of time.[7] In such cases, the prosecution must set forth a time frame in the indictment and charge the accused with offenses which reasonably fall within that period.[8]
 {¶ 14} According to Victim I, the sexual abuse occurred on numerous occasions over the course of several years. There is no evidence indicating the State possessed specific dates or times the abuse occurred, or that specific dates were ascertainable, given the pervasive nature of the conduct alleged. However, the State set forth a time range of 1996 to 1999 for the crimes against Victim I. Victim II was able to estimate, based on the fact she was home for summer vacation, that the abuse against her occurred during August of 2000.
 {¶ 15} Luks contends the failure to set forth a more specific time range violated his right to due process and cites to the federal Sixth Circuit case Valentine v. Konteh[9] in support of his argument. The court in Valentine acknowledged that "fairly large time windows in the context of child abuse prosecutions are not in conflict with constitutional notice requirements."[10] The *Page 8 
court stressed the problem in that case was not "the fact that the prosecution did not provide the defendant with exact times and places. * * * Instead, the problem is that within each set of 20 counts, there are absolutely no distinctions made."[11]
 {¶ 16} In Valentine, the defendant was indicted for 40 counts of sexual abuse. The court found Valentine's right to due process was violated because the counts were not connected to distinguishable incidents. In so holding, the court focused on the fact that there was no factual basis for the 40 separate incidents contained in the indictment, the bill of particulars, or the testimony at trial.[12] At trial, the victim in Valentine described the typical abuse scenarios and estimated the number of times the abusive offenses occurred. The court held that this prevented the jury from considering each count because they were not connected to distinguishable events, and deprived the defendant protection against double jeopardy.
 {¶ 17} In fact, the Valentine court held that "the due process problems in the indictment might have been cured had the trial court insisted that the prosecution delineate the factual bases for the forty separate incidents either before or during the trial."[13] *Page 9 
 {¶ 18} The instant case is distinguishable. In our case, the State dismissed the bulk of the indictments, presumably because they could not link those counts to specific events. The remaining counts were ones that the victims specifically recalled in detail.
 {¶ 19} Victim I testified to specific instances of abuse, not mere generalities. She testified that one time Luks placed candy by his penis and coaxed her into his bedroom. They then performed oral sex on each other three times. She specifically recalls he made her wear a blue-striped robe with nothing on underneath. She also recalled a time when Luks made her and two of her sisters line up in front of his bed. He performed oral sex on each of them, and made them reciprocate by performing oral sex on him. She also recalls a time when she and Luks were sitting on the couch and he promised to buy her candy for Christmas. He then made her perform oral sex on him.
 {¶ 20} The victims' older sister also recalled specific times that she witnessed Luks rape Victim I and two older sisters. She said she was about nine or ten years old at the time and the victim was eight. She saw Luks pull down Victim I's pants and move her underwear to the side; he then licked her vagina for about ten minutes.
 {¶ 21} She said the second time, Luks made her and Victim I come into his room. He then laid Victim I on the bed and told her he was going to "make her *Page 10 
feel nice." He then spread her legs and performed oral sex on her. She recalls that after he was finished, he kissed Victim I on the forehead and told both girls to go back to bed.
 {¶ 22} About a month after this second incident, she recalled Luks came into the children's bedroom and showed her, Victim I, and another sister candy and some change from his pizza delivery job. He then laid Victim I on the bed while the other two sisters watched from the other bed. He went under the sheet; because the sheet was threadbare she could see Luks' head moving around by Victim I's vagina. When Victim I tried to squirm away, he held her legs.
 {¶ 23} Testimony regarding these specific instances of abuse against Victim I supported Luks' convictions against Victim I. Therefore, he was not convicted based on vague, general allegations of abuse like the defendant in Valentine.
 {¶ 24} Victim II testified that when she was nine or ten years old she brought a cup of coffee to Luks in his bedroom. When she put the cup down, he grabbed her and threw her on the bed and laid on her. She said she kicked him and he fell off the bed. She stated that although she told the police that she was able to prevent Luks from touching her, he did in fact touch her breast. She specifically remembered she had just started wearing a training bra. This *Page 11 
testimony supports the kidnapping and gross sexual imposition charges against Luks regarding Victim II.
 {¶ 25} Additionally, "[a]bsent material detrimental to the preparation of a defense, the omission of specific dates and times is without prejudice and without constitutional significance."[14] Luks has failed to demonstrate he was prejudiced by the absence of specific dates set forth in the indictment and bill of particulars. Luks' defense centered upon his denial the acts in question ever occurred, regardless of when the acts were alleged to have occurred. Thus, he has failed to demonstrate how the absence of specific dates had any effect on his preparation of a defense in this regard.[15] Notably, the defendant inValentine claimed to have alibi defenses for a large portion of the dates covered by the indictment. Accordingly, Luks' first assigned error is overruled.
 Ineffective Assistance of Counsel {¶ 26} In his second assigned error, Luks asserts his counsel was ineffective on multiple grounds. We disagree. *Page 12 
 {¶ 27} We review a claim of ineffective assistance of counsel under the two-part test set forth in Strickland v. Washington.[16]6 Under Strickland, a reviewing court will not deem counsel's performance ineffective unless a defendant can show his lawyer's performance fell below an objective standard of reasonable representation and that prejudice arose from the lawyer's deficient performance.[17] To show prejudice, a defendant must prove that, but for his lawyer's errors, a reasonable probability exists that the result of the proceedings would have been different.[18] Judicial scrutiny of a lawyer's performance must be highly deferential.[19]
(1) Failure to cross-examine Victim I.
 {¶ 28} Luks claims his counsel was ineffective for failing to cross-examine Victim I about her prior inconsistent written statement. He contends the entire case rested on Victim I's credibility; therefore, cross-examination was crucial to his defense. He also claims counsel was ineffective for failing to preserve the prior inconsistent statement under seal for appellate court review. *Page 13 
 {¶ 29} We conclude that Luks was not prejudiced by his attorney's failure to cross-examine Victim I regarding her inconsistent statements contained within her written statement. Victim I readily admitted that she failed to previously tell various family service agencies about the abuse when they inquired whether she was sexually abused. Therefore, the fact she was not consistent about the abuse was known by the jury. Moreover, her older sister testified to witnessing some of the acts committed by Luks against the victim; this corroborated the victim's allegations of abuse.
(2) Sexual predator hearing.
 {¶ 30} Luks claims that his counsel was ineffective because he failed to advocate on his behalf at his sexual predator hearing. His counsel simply argued that Luks maintained his innocence.
 {¶ 31} Luks has failed to show how he was prejudiced by his counsel's alleged lack of effectiveness at his sexual predator hearing. We note that the trial court did not classify Luks as a sexual predator as he maintains, but classified him as a habitual offender.
 {¶ 32} Moreover, Luks has been sentenced to a mandatory life sentence. Therefore, it is unlikely that he will ever have to register. Even in the unlikely event he should be let out of prison, he will be subject to Senate Bill 10, effective January 1, 2008 (The Adam Walsh Act). Under S.B. 10, Luks will automatically *Page 14 
be reclassified as a "Tier III" offender based solely on the rape offenses he committed. Therefore, Luks' argument is moot.
(3) Sentencing.
 {¶ 33} Luks contends counsel was ineffective because he failed to argue on his behalf for a lesser sentence. Instead, the attorney merely reiterated Luks' claim that he was innocent. However, because Luks was sentenced to a mandatory life sentence pursuant to R.C. 2907.02(B), he was not prejudiced by his attorney's failure to set forth an argument.
(4) Closing argument.
 {¶ 34} Luks contends his counsel was ineffective for failing to request an outburst by the victims' sister during closing argument be stricken and for failing to request the court to instruct the jury to disregard the outburst.
 {¶ 35} During defendant's closing argument, the victims' sister shouted, "Bull f___ing s___t. F___k you. They f____ing did that s__t. F___k this court."[20] Counsel did not request the court to strike the outburst or instruct the jury to disregard the outburst. However, the trial court instructed the jury as follows:
 "In closing arguments counsel will set forth and develop theories and conclusions which they believe may reasonably be drawn from all the evidence of the case. Opening *Page 15 statements and closing arguments of counsel are permitted to assist the jury to understand and reach conclusions about issues which the jury is to decide. You are instructed that opening statements and closing arguments do not constitute evidence in this case, and they shall not be considered by the jury."[21]
 {¶ 36} A jury is presumed to follow the trial court's instructions;[22] therefore, counsel's inaction was not prejudicial.
(5) Journal.
 {¶ 37} Luks argues counsel was ineffective for failing to request a redaction of Victim II's journal. The journal only contains five written pages. The bulk of the journal contains Victim II's thoughts of unhappiness with her dysfunctional family and desire to have a role model she can look up to. This was harmless information.
 {¶ 38} In fact, Victim II never described Luks' abuse. Instead she made vague references to the fact that her aunt was taking Luks' side and that the reason the victim "did not tell anybody is because I didn't want to get involved." She also stated that her uncle belongs in jail. She never explicitly stated that she was abused. Based on the minimal amount of information in the journal, Luks was not prejudiced by the admission of the journal in its entirety. *Page 16 
 {¶ 39} Luks also argues counsel should have requested a handwriting expert because the journal contains different types of writing. However, at trial the victim was cross-examined by counsel regarding the different types of writing in the journal. Defense counsel also had the victim give a writing sample to compare to the journal. Thus, the jury was apprised of the different styles of handwriting.
(6) Jury instruction.
 {¶ 40} Luks argues that his counsel was ineffective for failing to request a "drug addict" jury instruction concerning the State's witnesses who were chronic users of alcohol and drugs. Luks' counsel had throughly cross-examined the witnesses regarding their drug and alcohol usage.
 {¶ 41} In addition, Victim II admitted she abused drugs, associated with disreputable people, and frequently ran away from home. Moreover, the victim's grandmother and aunt both testified to Victim II's drug addiction. Therefore, the jury was aware of her drug problem and shady past. The court instructed the jury that they were the sole judges of the witnesses' credibility and that in determining the credibility they should consider all facts and circumstances surrounding the testimony of the witnesses that would "add or detract from the credibility and weight of the witness's testimony."[23] The witnesses' drug abuse *Page 17 
would be a circumstance considered by the jury. An additional instruction would have been superfluous.
(7) Jury verdict forms.
 {¶ 42} Luks argues his counsel was ineffective for failing to request a verdict form that delineated the use of force and threatened use of force. However, for reasons set forth in our discussion of Luks' fifth assigned error, counsel was not ineffective for failing to request the verdict form. Accordingly, Luks' second assigned error is overruled.
 Grand Jury Testimony {¶ 43} In his third assigned error, Luks argues the trial court erred by not permitting the disclosure of grand jury testimony, and for not ruling on Luks' motion requesting the disclosure.
 {¶ 44} Generally, a motion that is still pending at the time of the final disposition of a case is presumed to have been denied.[24] We conclude the trial court did not err by denying Luks' motion because the disclosure of the grand jury testimony in the instant case would not have been appropriate.
 {¶ 45} Crim. R. 6(E) controls the disclosure of grand jury testimony and provides that matters occurring before a grand jury may be disclosed "when *Page 18 
permitted by the court at the request of the defendant upon a showing that grounds may exist for a motion to dismiss the indictment because of matters occurring before the grand jury."
 {¶ 46} The Ohio Supreme Court in State v. Laskey[25] set forth the standard for considering such a request:
 "Generally, proceedings before a grand jury are secret and an accused is not entitled to inspect grand jury minutes before trial [or at trial] * * *. This rule is relaxed only when the ends of justice require it, such as when the defense shows that a particularized need exists for the minutes which outweighs the policy of secrecy."[26]
 {¶ 47} In State v. Greer, [27] the Supreme Court further explained:
 "Whether a particularized need for disclosure of grand jury testimony is shown is a question of fact; but, generally, it is shown where from a consideration of all the surrounding circumstances it is probable that the failure to disclose the testimony will deprive the defendant of a fair adjudication of the allegations placed in issue by the witness' trial testimony."[28]
 {¶ 48} In this case, the record reveals Luks failed to demonstrate a particularized need to inspect the grand jury testimony. His bald assertion that he needed to examine the testimony of adverse witnesses for inconsistencies *Page 19 
failed to set forth a particularized need. When a defendant "speculates that the grand jury testimony might have contained material evidence or might have aided his cross-examination * * * by revealing contradictions," the trial court does not abuse its discretion by finding the defendant had not shown a particularized need.[29] In addition, grand jury testimony cannot be used as a discovery tool.[30]
Accordingly, Luks' third assigned error is overruled.
 Speedy Trial {¶ 49} In his fourth assigned error, Luks argues the trial court should have dismissed the indictment for violation of his right to a speedy trial and because the statute of limitations for the crimes had expired.
 {¶ 50} We find no merit to his argument that the statute of limitations for his crimes expired. He claims that as early as March 21, 2000, there were documents from the family services agency in Iowa which showed there were allegations of abuse by Luks against a third niece, and that this should have triggered the statute of limitations for all the other counts. *Page 20 
 {¶ 51} Pursuant to R.C. 2901.13(A)(1), the statute of limitations for most felonies is six years. However, in 1999, the legislature extended the statute of limitations for various offenses, including rape, gross sexual imposition, and kidnapping. Pursuant to R.C. 2901.13(A)(3), the statute of limitations for these crimes is now twenty years.[31]
 {¶ 52} The criminal conduct against Victim I occurred prior to the passage of this legislation. However, Section 3 of H.B. 49, which amended the statutory limits provided:
 "Section 2901.13 of the Revised Code, as amended by this act, applies to an offense committed on and after the effective date of this act and applies to an offense committed prior to the effective date of this act if prosecution for that offense was not barred under section 2901.13 of the Revised Code as it existed prior to the effective date of this act."
 {¶ 53} In the instant case, the conduct alleged in the counts concerning Victim I commenced January 24, 1996 and continued through January 23, 1999. At the time the legislation was passed, the former statute of limitations had not expired, therefore, the statute of limitations to prosecute these crimes is twenty years. An indictment was returned on these counts on January 13, 2006. Thus, only ten years had elapsed. The counts against Victim II, which were committed *Page 21 
in August of 2000, were also brought within the statute of limitations.
Therefore, the court did not err by refusing to dismiss the charges.
 {¶ 54} Luks fails to set forth an argument as to the violation of his speedy trial rights. Therefore, pursuant to App. R. 12(A)(2), we will not address this argument. Accordingly, Luks' fourth assigned error is overruled.
 Jury Verdict {¶ 55} In his fifth assigned error, Luks argues the jury verdict was not valid because the verdict forms failed to indicate whether the jury unanimously found that appellant used force or the threat of force in committing the rapes. We disagree.
 {¶ 56} Initially, we note that Luks' attorney failed to object to the verdict forms; therefore, he waived all but plain error regarding this issue. We conclude plain error did not occur.
 {¶ 57} It was unnecessary for the jury to unanimously find that Luks either "threatened" force or used "actual" force in committing the offenses. These two concepts of force result in the same mens rea. That is, the jury was required to find that Luks "purposely compelled" the girls to engage in the sexual conduct. It was not necessary for the jury to unanimously agree on what type of force was used by Luks. *Page 22 
 {¶ 58} The United States Supreme Court rejected a similar argument inSchad v. Arizona.[32] In Schad, the defendant was convicted of first-degree murder after the prosecution advanced theories of premeditated murder and felony murder. The jury was not instructed to unanimously find defendant guilty based on one of the proposed theories of guilt. The Schad court found that different mental states of moral and practical equivalence (premeditated and felony murder) may serve as alternative means to satisfy the mens rea element for the single offense of murder, without infringing upon the constitutional rights of the defendant.[33]
 {¶ 59} The Schad court noted:
 "We have never suggested that in returning general verdicts in [cases proposing multiple theories] the jurors should be required to agree upon a single means of commission, any more than the indictments were required to specify one alone. In these cases, as in litigation generally, `different jurors may be persuaded by different pieces of evidence, even when they agree upon the bottom line. Plainly there is no general requirement that the jury reach agreement on the preliminary factual issues which underlie the verdict.'"[34] *Page 23 
 {¶ 60} In the instant case, the focus is not what kind of force he used, i.e. threatened or actual force. The issue is whether he "purposely compelled" the girls to engage in the conduct by force or threat of force.
 {¶ 61} Additionally, the trial court gave a general unanimity instruction. In State v. Gibbs, [35] we held that a "general unanimity instruction is sufficient to ensure a unanimous verdict on the factual basis for conviction `even where the indictment alleges numerous factual basis for liability. * * * The verdict stands if the evidence is sufficient with respect to any one of the acts charged." There is no doubt from the review of the record that the girls were purposely compelled to engage in the conduct. Accordingly, Luks' fifth assigned error is overruled.
 Cumulative Errors {¶ 62} In his sixth assigned error, Luks argues the cumulative errors deprived him of a fair trial and fair sentencing hearing.
 {¶ 63} We have concluded that none of Luks' assigned errors have merit. The mere fact that Luks assigned so many errors, does not create cumulative prejudice. As the Ohio Supreme Court has held: "[defendant's] contention that cumulative errors committed in his case resulted in substantial prejudice is *Page 24 
without merit, since `such errors cannot become prejudicial by sheer weight of numbers.'"[36] Accordingly, Luks' sixth assigned error is overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to said court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
PATRICIA ANN BLACKMON, JUDGE
 ANTHONY O. CALABRESE, JR., P.J., and MELODY J. STEWART, J., CONCUR *Page 25 
 Appendix "I. The convictions violate the Sixth and Fourteenth Amendments of the federal Constitution, Valentine v. Konich, 395 F.3d 626
(6th Cir., 2005), In re Oliver, 333 U.S. 257 (1948) and the charging method employed by the State denied the appellant fair notice of the charges against him and denied him adequate opportunity to prepare his defense."
 "II. Counsel was ineffective under the Sixth and Fourteenth Amendments of the federal Constitution when counsel failed to act as an advocate and abandoned the appellant."
 "III. The court should have granted appellant's motion for disclosure of Grand Jury testimony filed May 8, 2006." *Page 26 
 "IV. The appellant's right to a statutory speedy trial and whether (sic) the statute of limitations was violated."
 "V. The verdicts for rape with force or threats of force must be vacated as it relates to force or threat of force because it is impossible to determine whether the jury was unanimous in finding either force or threat of force and the finding had to be unanimous as to either element in order for the Court to impose a life sentence. Otherwise, the verdicts for rape violate the Sixth and Fourteenth Amendments of the federal constitution."
 "VI. The cumulative errors denied the appellant of a fair trial and sentencing hearing in violation of the Fourteenth Amendment of the federal Constitution."
[1] See appendix.
[2] It is the policy of this court to not name victims of sexual abuse. Therefore, we will refer to the 18-year old victim as Victim I, and the 13-year old victim as Victim II.
[3] The trial was a joint trial against Luks and the children's father Patrick Luks. The charges against Patrick Luks were dismissed after the State's case-in-chief.
[4] State v. Sellards (1985), 17 Ohio St.3d 169, 171. See, also,State Hensley (1991), 59 Ohio St.3d 136, 141.
[5] Sellards, at 171.
[6] Id. at 171.
[7] State v. Brady, Cuyahoga App. No. 87854, 2007-Ohio-1453; State v.Henderson, Cuyahoga App. No. 87236, 2006-Ohio-5567; State v.Yaacov, Cuyahoga App. No. 86674, 2006-Ohio-5321; State v. Johnson, Cuyahoga App. No. 80436, 2002-Ohio-7057.
[8] Id. See, also State v. Daniel (1994), 97 Ohio App.3d 548,557.
[9] (6th Cir. 2005), 395 F.3d 626.
[10] Id. at 632.
[11] Id. at 632.
[12] Id. at 633.
[13] Id. at 634.
[14] State v. Barnecut (1988), 44 Ohio App.3d 149.
[15] See State v. Yaacov, supra; State v. Carnes, 12th
Dist. No. CA2005-01-001, 2006-Ohio-2134.
[16] (1984), 466 U.S. 668, 80 L.Ed.2d 674, 104 S.Ct. 2052.
[17] State v. Bradley (1989), 42 Ohio St.3d 136, paragraph one of syllabus.
[18] Id. at paragraph two of syllabus.
[19] State v.Sallie, 81 Ohio St.3d 673, 674, 1998-Ohio-343.
[20] Tr. 832.
[21] Tr. 780.
[22] State v. Ahmed, 103 Ohio St.3d 27, 2004-Ohio-4190; State v.Hancock, 108 Ohio St.3d 57, 2006-Ohio-160.
[23] Tr. 785.
[24] State v. Whitaker, Cuyahoga App. No. 83824, 2004-Ohio-5016;State v. Mollick (Aug. 23, 2000), 9th Dist. No. 99CA007381.
[25] (1970), 21 Ohio St.2d 187.
[26] Id. at 191.
[27] (1981), 66 Ohio St.2d 139.
[28] Id. at paragraph three of the syllabus.
[29] State v. Webb (1994), 70 Ohio St.3d 325, 337.
[30] State v. Laskey, supra; State v. McClutchen, Cuyahoga App. No. 81821, 2003-Ohio-4802, at ¶ 22.
[31] State v. Copeland, Cuyahoga App. No. 89455, 2008-Ohio-234.
[32] (1991), 501 U.S. 624, 111 S.Ct. 2491, 115 L.Ed.2d 555.
[33] Id. at 643, 111 S.Ct. 2491, 115 L.Ed.2d 555.
[34] Id. at 631-632, 111 S.Ct. 2491, 115 L.Ed. 2d 555, quotingMcKoy v. N. Carolina (1990), 494 U.S. 433, 449, 110 S.Ct. 1227,108 L.Ed.2d 369 (Blackmun, J., concurring).
[35] Cuyahoga App. No. 86126, 2006-Ohio-175. See, also, State v.Jones, Cuyahoga App. No. 89374, 2008-Ohio-1715; State v. Butler, Cuyahoga App. No. 89755, 2008-Ohio-1924.
[36] State v. Hooks, 92 Ohio St.3d 83, 2001-Ohio-150, quoting,State v. Hill (1996), 75 Ohio St.3d 195, 212, 1996-Ohio-222. *Page 1