[Cite as *State v. Jones*, 2022-Ohio-3822.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                         :

    Plaintiff-Appellee,           :

                                      No. 111380

    v.                             :

VIRGIL JONES,                         :

    Defendant-Appellant.          :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** October 27, 2022

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-05-461253-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting
Attorney, and Frank Romeo Zeleznikar, Assistant
Prosecuting Attorney, *for appellee.*

Virgil Jones, *pro se.*

FRANK DANIEL CELEBREZZE, III, P.J.:

{¶ 1} Appellant Virgil Jones ("appellant") appeals the judgment of the Cuyahoga County Court of Common Pleas denying his motion to arrest the judgment. After a thorough review of the applicable law and facts, we affirm the judgment of the trial court.

# I. Factual and Procedural History

{¶ 2} The underlying facts of this matter were outlined by this court in *State v. Jones*, 8th Dist. Cuyahoga No. 89374, 2008-Ohio-1715 ("*Jones I*"), as follows:

On November 30, 2004, a group of people, including Annie Brown (Annie) and Booker Burks (Booker), were at Calvin Langford's (Skinny) house in Cleveland. At one point, Booker apparently took appellant's white mountain bike without permission and left Skinny's house. The next day, December 1, 2004, appellant discovered that his bike was missing and learned "through the grapevine" that Booker was seen riding it. Appellant dressed in dark clothing, put a gun in the waist of his pants, and headed to Annie's house, where he thought he would find Booker. When appellant arrived at Annie's house, 2666 East 68th Street in Cleveland, he found Annie and her boyfriend Emmanuel Mustin (Emmanuel), who knew that appellant was looking for Booker and that appellant regularly carried a gun. Appellant entered the house and stated, "Where that [ni**er] at with my bike?" Annie and Emmanuel got up to leave the house, and Emmanuel heard the sound of a door breaking in the front room and then heard two gunshots.

Annie and Emmanuel ran out of the house and went in opposite directions. A moment later, Emmanuel heard a single gunshot. Emmanuel headed back toward the house and saw appellant pedaling toward him on the bike. According to Emmanuel, appellant approached him and, when they were face to face, stated, "I just killed both of them. And if you say my name come up, I'm gonna kill you."

On December 2, 2004, Lloyd White, who lives in the house next door to Annie's, went to the front door to get the paper and saw someone lying against the fence between the houses. As he approached the person, he saw blood coming out of her ear. Lloyd called 911. The authorities arrived and saw that Annie was dead from a single gunshot wound to the head. The police also found Booker dead inside the house from gunshot wounds to the head and chest.

Later on the evening of December 2, 2004, appellant boarded a bus near Euclid and Superior avenues in Cleveland after securing his bike to the rack in front. According to Joseph Dye (Joseph), who was the bus driver and an acquaintance of appellant's, appellant began telling a story about an incident that occurred the day before near East 68th Street and Woodland Avenue. Joseph testified as follows:

"Well, [appellant] proceeded to tell me that someone had stolen his bike, which was his bike I just identified, and that he had found out who had — he was visiting a friend's house and someone had took his bike out this friend's yard. He found out who — where the bike might possibly be and he went to get it.

* * *

"He said he went to the house and he knocked on the door and I think he said a female came to the door. She resisted to let him in and he pushed his way past her. And he proceeded to go to a bedroom where I suppose the guy was in the bedroom. He said that he fired his firearm at him and hit him in the chest once and once in the head area.

* * *

"Well, he said it was two more individuals in the house, and I imagine they ran when they heard the first shot. So he said he caught up with the female in the yard and shot her in the head and — and he said he shot the gun at the other guy, but the gun jammed.

* * *

"He told me that he had told him if he mentioned anything about the incident, he would come back and kill him."

Nadine Murphy, who was riding the same bus as appellant on December 2, 2004, testified that appellant asked her if she heard about the people who were killed on East 68th and Woodland. When she said no, appellant told her about it and said that he was the one who "dismissed" them.

On January 25, 2005, appellant was indicted with aggravated murder of Annie and Booker, in violation of R.C. 2903.01; attempted aggravated murder related to Emmanuel; aggravated burglary in violation of R.C. 2911.11; intimidation of Emmanuel in violation of R.C. 2921.04; and various firearm charges and associated specifications.

On December 14, 2006, a jury found appellant guilty of murdering Annie and Booker with a firearm, mass murder, felony murder, and murder to escape specifications, intimidating Emmanuel, and committing burglary. Appellant was found not guilty of the attempted murder of Emmanuel. In addition, the court found appellant guilty of carrying a concealed weapon and having a weapon under disability. On

December 20, 2006, the court sentenced appellant to life in prison with the possibility of parole after 33 years.

*Id.* at ¶ 2-8.

{¶ 3} Jones appealed his conviction and sentence in *Jones I*, raising four issues for review: (1) prosecutorial misconduct during closing arguments, (2) manifest weight of the evidence, (3) the trial court failed to inquire whether he understood that he had a right to testify, and (4) ineffective assistance of counsel where his trial counsel failed to object to the prosecutor's remarks during closing argument.

{¶ 4} This court found no merit to the asserted assignments of error and affirmed the judgment of the trial court. *Id.*

{¶ 5} Following the resolution of his direct appeal, appellant filed several postconviction motions, including a 2017 motion to arrest judgment, pursuant to R.C. 2947.02. The motion was denied, and appellant did not appeal this denial.

{¶ 6} In 2020, appellant again filed a motion to arrest judgment, which is the subject of the instant appeal. In this motion, he raised the following arguments: (1) the trial court lacked subject-matter jurisdiction to sentence him to 33 years to life; (2) the statutes under which he was sentenced had been repealed prior to his sentencing; and (3) the court was biased against him and denied him his right to represent himself.

{¶ 7} The trial court denied the motion on the grounds of res judicata, and appellant filed the instant appeal, raising four assignments of error for our review:

I. The court was in error and the appellant was prejudiced when the court breached its duty in not obeying federal and state constitutional law.

II. The court was in error and the appellant was prejudiced when the court failed to uphold its oath of office.

III. The court was in error and the appellant was prejudiced when the court personally interfered with appellant's civil right to due process and to the equal protection of the law.

IV. The court was in error and the appellant was prejudiced when the court knew or should have known that the former laws were repealed.

## II. Law and Analysis

{¶ 8} All of appellant's assignments of error arise from the court's denial of his motion to arrest judgment and can be resolved together. Within his motion, appellant made the following arguments: (1) the trial court lacked subject-matter jurisdiction because the law under which he had been sentenced had been repealed; and (2) the trial judge was biased against him in refusing to allow appellant to represent himself. It appears that in this appeal, appellant's arguments only involve his assertion that the court sentenced him under a repealed statute.

{¶ 9} Appellant is essentially arguing that the trial court imposed a sentence that is not authorized by statute and was, therefore, void. A void sentence can be attacked anytime. *See, e.g., State v. Brooks*, 8th Dist. Cuyahoga No. 108919, 2020-Ohio-3286, ¶ 7, citing *State v. Williams*, 148 Ohio St.3d 403, 2016-Ohio-7658, 71 N.E.3d 234, ¶ 22, and *State v. Fischer*, 128 Ohio St.3d 92, 2010-Ohio-6238, 942 N.E.2d 332, ¶ 25.

{¶ 10} The Supreme Court of Ohio has recently realigned its "void-sentence jurisprudence" in *State v. Harper*, 160 Ohio St.3d 480, 2020-Ohio-2913, 159 N.E.3d 248, and *State v. Henderson*, 161 Ohio St.3d 285, 2020-Ohio-4784, 162 N.E.3d 776. Under *Harper* and *Henderson*, "sentences based on an error, including sentences in which a trial court fails to impose a statutorily mandated term," are voidable, not void. *Henderson* at ¶ 1; *see also Harper* at ¶ 4. As the court explained in *Henderson*:

> A judgment or sentence is void only if it is rendered by a court that lacks subject-matter jurisdiction over the case or personal jurisdiction over the defendant. If the court has jurisdiction over the case and the person, any sentence based on an error in the court's exercise of that jurisdiction is voidable. Neither the state nor the defendant can challenge the voidable sentence through a post-conviction motion.

*Henderson* at ¶ 43.

{¶ 11} Here, there is no question that the trial court had subject-matter jurisdiction over appellant's case and had personal jurisdiction over him. R.C. 2931.03; *Smith v. Sheldon*, 157 Ohio St.3d 1, 2019-Ohio-1677, 131 N.E.3d 1, ¶ 8 ("[A] common pleas court has subject-matter jurisdiction over felony cases."). Even if the trial court had improperly sentenced appellant, the sentencing error would render appellant's sentence voidable, not void, and appellant could not challenge the sentence through a postconviction motion to arrest judgment. Appellant's sentence could be challenged only on direct appeal.

{¶ 12} The trial court denied appellant's motion on the grounds of res judicata. Under this doctrine,

> a final judgment of conviction bars a convicted defendant who was represented by counsel from raising and litigating in any proceeding

except an appeal from that judgment, any defense or any claimed lack of due process that was raised or could have been raised by the defendant at trial, which resulted in that judgment of conviction, or on an appeal from that judgment.

*State v. Perry*, 10 Ohio St.2d 175, 226 N.E.2d 104 (1967), paragraph nine of the syllabus.

{¶ 13} It is well settled that the doctrine of res judicata bars claims that could have been raised on direct appeal. *State v. Davis*, 119 Ohio St.3d 422, 2008-Ohio-4608, 894 N.E.2d 1221, ¶ 6. Because appellant could have, but did not, raise any issue regarding his sentence in his direct appeal, the trial court properly determined that his arguments were barred by res judicata. The trial court, therefore, properly denied appellant's motion to arrest judgment.

{¶ 14} All of appellant's assignments of error are overruled.

### III. Conclusion

{¶ 15} The trial court did not err in denying appellant's motion to arrest judgment. Appellant's motion was barred by res judicata because the issues raised could have been asserted in his direct appeal but were not. All of appellant's assignments of error are overruled, and the judgment of the trial court is affirmed.

{¶ 16} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
FRANK DANIEL CELEBREZZE, III, PRESIDING JUDGE

KATHLEEN ANN KEOUGH, J., and
MICHELLE J. SHEEHAN, J., CONCUR