JOURNAL ENTRY AND OPINION *Page 3 
{¶ 1} Defendant-appellant, Jeffrey Butler ("defendant"), appeals a judgment of the Common Pleas Court, entered pursuant to a jury verdict, finding him guilty of kidnapping and theft. For the reasons that follow, we affirm.
 {¶ 2} The facts leading to defendant's convictions are as follows: On November 6, 2006, Sandra Skidmore ("Skidmore") and Clara Kitley ("Kitley") were walking to a parking lot after work. As they reached the parking lot, a man came behind Skidmore, grabbed her around the neck, and said "Give me your stuff or I'll cut you." After a brief scuffle, the man, later identified as defendant, grabbed one of Skidmore's bags and fled. Skidmore called the police immediately, and, within one hour, the police had arrested the defendant. Shortly thereafter, Kitley went to the location where the defendant was being detained and identified him as the man that robbed Skidmore. The following day, Skidmore and Kitley went to the police station to look at a photographic array. Both women identified the defendant as the man that robbed Skidmore the previous day.
 {¶ 3} On November 17, 2006, the Cuyahoga County Grand Jury indicted defendant on one count of kidnapping in violation of R.C. 2905.01 and one count of robbery in violation of R.C. 2911.01.
 {¶ 4} Prior to trial, defendant moved to suppress the identifications made by Kitley and Skidmore claiming that they were the result of an impermissibly suggestive cold stand and photograhic array. After conducting an evidentiary hearing, the trial court denied that motion. *Page 4 
 {¶ 5} On February 26, 2007, defendant was found guilty of kidnapping in count one, with the additional finding that he released the victim in a safe place unharmed. In count two, defendant was found not guilty of robbery but guilty of theft. He now appeals and presents the following four assignments of error.
 {¶ 6} "I. Jeffrey Butler was deprived of his constitutional rights to due process and a fair trial by the admission of identifications that were the result of identification procedures which were unduly suggestive."
 {¶ 7} In his first assignment of error, defendant argues that the trial court erred in failing to suppress Skidmore's and Kitley's identification of him as the assailant. Defendant says that both identification procedures, the cold stand and the photographic array, were unreliable and impermissibly suggestive.
 {¶ 8} A court is not required to suppress an identification of a suspect unless the confrontation was unnecessarily suggestive of the suspect's guilt and the identification was unreliable under all the circumstances. In re Henderson, Cuyahoga App. No. 79716, 2002-Ohio-483. No due process violation will be found where an identification does not stem from an impermissibly suggestive confrontation but is instead the result of observations at the time of the crime. Id.
 {¶ 9} In determining whether an identification is reliable, a court must consider (1) the witness's opportunity to view the suspect at the time of the incident, (2) the witness's degree of attention, (3) the accuracy of the witness's prior description, (4) the witness's certainty when identifying the suspect at the time of the *Page 5 
confrontation, and (5) the length of time elapsed between the crime and the identification. State v. Waddy (1992), 63 Ohio St.3d 424, 439.
 {¶ 10} With these principals in mind, we proceed to address whether the identification procedures utilized in this case, i.e., the cold stand and the photographic array, were unreliable and impermissibly suggestive to the defendant.
Cold Stand
 {¶ 11} In a "cold stand," a victim or witness, in a relatively short time after the incident, is shown only one person and asked whether they can identify the perpetrator of the crime. State v. Scott (May 11, 2000), Cuyahoga App. No. 76171. The court must consider the aforementioned factors in determining whether the cold stand or one-on-one show-up identification is permissible. See State v.Freeman, Cuyahoga App. No. 85137, 2005-Ohio-3480, T|20; State v. Rogers(Nov. 16, 2000), Cuyahoga App. No. 77723.
 {¶ 12} Here, Cleveland police officer Daniel Dickens ("Dickens") responded to Skidmore's call that she had been robbed. Dickens obtained a description from both Skidmore and Kitley. Dickens testified that both Skidmore and Kitley described the assailant as a black male, approximately 40 years old, approximately 5'7" and 140 pounds, wearing a red plaid coat and dark pants, with short dark hair. Kitley recalled that the assailant had a strange grey stripe on his tennis shoes. Skidmore also said that the assailant took her bookbag, which contained a book and an umbrella. Dickens testified that shortly after he spoke with the women, he saw a man fitting the *Page 6 
assailant's description standing on a corner with the bookbag, book, and umbrella nearby. Dickens testified that Kitley's earlier description of the man who robbed her friend was consistent with defendant at the scene.
 {¶ 13} Within a half hour after the defendant was arrested, Kitley went to the location where defendant was being detained and positively identified him. This was approximately two to three hours after the robbery. Kitley testified that when she saw defendant at the cold stand identification, she immediately noticed that the defendant was wearing the same shoes that she had noticed on the man who robbed her friend. However, contrary to defendant's assertions, Kitley's identification was not based solely on defendant's tennis shoes. Rather, Kitley testified that when Skidmore was robbed, she was able to see the assailant's face because it was still light out. She also testified the robbery took about three to four minutes, during which she was staring at the defendant's face the whole time.
 {¶ 14} After careful review of the record, we find that Kitley's cold stand identification of defendant was reliable: she had sufficient opportunity to view Skidmore's attacker at the time of the crime; her attention was not diverted; her description to Dickens of the man who robbed her friend was exactly consistent with the appearance of defendant at the cold stand; she was certain defendant and the assailant were the same person; and only 2-3 hours has elapsed since the robbery. Accordingly, we conclude from the record before this Court that Kitley's cold stand identification of defendant satisfies the conditions established in Freeman, supra, *Page 7 
and is, therefore, reliable. Accordingly, the trial court did not err in denying defendant's motion to suppress the identification made by Kitley.
Photographic Array
 {¶ 15} In a photographic array, a victim or witness is shown several photographs and asked whether they can identify the perpetrator of the crime. The defendant bears the burden of establishing that the photographic identification procedure was unnecessarily suggestive.State v. Wills (1997), 120 Ohio App.3d 320, 324-325.
 {¶ 16} Here, the photo array consisted of six pictures. Defendant maintains that it was unduly suggestive for two reasons: first, his head is looking down while the other subjects were looking directly at the camera, and second, he was the only individual in the array who was in the 40's age range.
 {¶ 17} Our review of the photo array reveals that, while there was some variation among the photographs, none of the variations were "suggestive." Skidmore and Kitley were given a good choice of pictures, all males of the same race, hair length, facial hair, dress, and complexion. Contrary to defendant's assertions, we do not find any significant variation in age such that the age parameters were unduly suggestive. "A defendant in a lineup need not be surrounded by people nearly identical in appearance." State v. Davis (1996),76 Ohio St.3d 107, 112. Moreover, the test for suggestiveness is "whether the picture of the accused, matching descriptions given by the witness, so stood out from all of *Page 8 
the photographs as to suggest to an identifying witness that [the person] was more likely to be the culprit." State v. Wills, supra at 325.
 {¶ 18} Here, we do not find that defendant's photo stood out in any way. Moreover, under the totality of the circumstances, there are sufficient indicia of reliability in the identifications to make them reliable. While the robbery was of short duration, both Skidmore and Kitley testified that the parking lot was well-lit, revealing the face of the defendant the entire time. Thus, both Skidmore and Kitley had sufficient opportunity to observe the attacker. Both Skidmore and Kitley gave descriptions to the Cleveland Police within minutes of the attack. The defendant was arrested within one hour of the attack, based on the accuracy of the description provided by Skidmore and Kitley. Kitley made her initial identification within hours of the robbery. Skidmore and Kitley identified defendant in the photo array the day after the attack, and they were separated from each other when they did so. They were both certain of their identifications.
 {¶ 19} Accordingly, we find that the photographic array was not suggestive, and the trial court did not err in denying defendant's motion to suppress the photo identifications made by Kitley and Skidmore.
 {¶ 20} Defendant's first assignment of error is overruled.
 {¶ 21} "II. Jeffrey Butler was deprived of his constitutional right to a fair trial before a jury of his peers by the trial court's improper jury instructions." *Page 9 
 {¶ 22} In his second assignment of error, defendant argues that the jury was not properly instructed regarding the need for unanimity. Specifically, defendant argues that the trial court failed to instruct the jurors that they must unanimously agree as to how defendant allegedly committed the offense of kidnapping.
 {¶ 23} A review of the record reveals that the trial court provided the following jury instruction, in pertinent part, with regard to kidnapping:
 {¶ 24} "Before you can find the defendant guilty of kidnapping, you must find beyond a reasonable doubt * * * that the defendant * * * by force, threat or deception * * * it's got to be one of those three or two of those, three of those * * * removed [victim] from the place where she was found; or restrained her of her liberty * * * for the purpose of facilitating the commission of a felony or the flight thereafter and/or terrorizing or inflicting serious physical harm on [victim]."
 {¶ 25} The trial court then explained the elements again, in pertinent part, as follows:
 {¶ 26} "Before you can find the defendant guilty of kidnapping you must find beyond a reasonable doubt that on or about the 6th day of November, 2006 in Cuyahoga County, in the State of Ohio the defendant, in element number 1, is [sic] by force, threat or deception removed [victim] from the place where she was found; or restrained her of her liberty. That's number 2. It's either (A) or (B), removed the person from the place where the person is found; or (B), restraining of the person-of the other person's liberty. *Page 10 
 {¶ 27} "And the third being with the purpose of facilitating the commission of a felony or the flight thereafter; and/or terrorizing or inflicting serious physical harm on the [victim]. Okay? So there is [sic] three elements here. You've got the first being force, by force, threat or deception. Two, remove the person-the other person from the place where they were found, restraining of the person's liberty. Three, is it's — two is an (A) or (B) and two has (A), (B), or (C) with the purpose to commit or terrorize another or inflict harm on them.
 {¶ 28} "You know, force is a term we've used. Force means any violence, compulsion or constraint physically exerted by any means upon or against a person or thing.
 {¶ 29} "Threat includes a direct threat sufficient to overcome the will of the [victim] * * *.
 {¶ 30} "Purpose. The purpose to facilitate the commission of any felony or flight thereafter; and/or terrorize or inflict serious physical harm on the victim are essential elements of the crime of kidnapping. * * * A person acts purposely when it is his specific intention to cause a certain result. It must be established in this case that at the time in question there was a specific intention to facilitate the commission of a felony or the flight thereafter; and/or terrorize or inflict serious physical harm on the victim * * *. *Page 11 
 {¶ 31} "To remove from the place where found means to change [the victim's] location; this need not be for any specific distance or duration of time or in any specific manner.
 {¶ 32} "To restrain one of her liberty means to limit or restrain [the victim's] freedom of movement. The restraint need not be for any specific duration or time or in any specific manner * * *."
 {¶ 33} United States Supreme Court cases reflect the long established criminal law rule that "it may be alleged in a single count that the means by which the defendant committed the offenses are unknown or that the defendant committed it by one or more specified means." Schad v.Arizona (1991), 501 U.S. 624, 631 (citing Fed.R.Crim.P. 7(c)(1)).
 {¶ 34} Moreover, in Ohio, the prevailing rule is that a general unanimity instruction, such as the one given in this case, "will ensure that the jury is unanimous on the factual basis for a conviction even where the indictment alleges numerous factual bases for liability."State v. Gibbs, Cuyahoga App. No. 86126, 2006-Ohio-175; State v.Mercer, Cuyahoga App. No. 81923, 2003-Ohio-3530. It is presumed that "when a jury returns a guilty verdict on an indictment charging several acts in the conjunctive * * * the verdict stands if the evidence is sufficient with respect to any one of the acts charged." Id.
 {¶ 35} Here, the evidence was sufficient to find defendant guilty of kidnapping under Subsection three. The evidence indicated that defendant "restrained the *Page 12 
victim of her liberty" when he forcibly grabbed Skidmore around the neck and threatened to "cut her" if she failed to give him her purse. The general unanimity instruction and the evidence in the record was sufficient to ensure a unanimous verdict. We do not find that the outcome of the trial would have been different if the jury had been instructed differently.
 {¶ 36} Defendant's second assignment of error is overruled.
 {¶ 37} "III. Jeffrey Butler was denied his constitutional right to a fair trial by repeated prosecutorial misconduct during the State's cross-examination of Mr. Butler."
 {¶ 38} In order for this Court to reverse a conviction on the grounds of prosecutorial misconduct, we must find that (1) the remarks were improper and (2) that they prejudicially affected substantial rights of the defendant. State v. Smith (1984), 14 Ohio St.3d 13, 14.
 {¶ 39} Here, defendant argues that he was unfairly prejudiced when the State made improper statements during his cross-examination. Defendant does not cite to the record to show what questions he takes exception to. Rather, he only mentions one specific instance where the State questioned him with regard to having facial hair on the night of the robbery.
 {¶ 40} Our review of the record does not show that the State engaged in any improper questioning of the defendant. The State is permitted to cross-examine any defense witness so as to impeach them with regard to memory, credibility, and *Page 13 
inconsistent prior statements. Here, the State impeached the testimony of the defendant on direct examination where he stated that he did not have facial hair on the night of the robbery by presenting the testimony of both witnesses and the photograph taken by the police that night to show that he did in fact have facial hair.
 {¶ 41} The third assignment of error is overruled.
 {¶ 42} "IV. Jeffrey Buller [sic] has been deprived of his liberty without due process of law by his conviction for kidnapping, as said conviction was not supported by sufficient evidence to prove his guilt beyond a reasonable doubt."
 {¶ 43} In his fourth assignment of error, defendant argues that there was insufficient evidence to support his conviction for kidnapping. Crim.R. 29(A) provides that a trial court "shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, * * * if the evidence is insufficient to sustain a conviction of such offense or offenses." To determine whether the evidence before a trial court was sufficient to sustain a conviction, an appellate court must view that evidence in a light most favorable to the State. State v.Dennis (1997), 79 Ohio St.3d 421, 430.
 {¶ 44} An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. State v. Thompkins (1997), 78 Ohio St.3d 380, 386. The claim of insufficient evidence invokes an inquiry about due *Page 14 
process. It raises a question of law, the resolution of which does not allow the court to weigh the evidence. Id. "In essence, sufficiency is a test of adequacy; whether the evidence is legally sufficient to sustain a verdict." Id. A verdict will not be disturbed on appeal unless the reviewing court finds that reasonable minds could not have arrived at the conclusion reached by the trier of fact. State v. Dennis,79 Ohio St.3d 421, 430, 1997-Ohio-372.
 {¶ 45} R.C. 2905.01(A)(3) defines kidnapping in pertinent part as follows:
 {¶ 46} "(A) No person, by force, threat, or deception, * * * by any means, shall remove another from the place where the person is found or restrain the liberty of the other person, for any of the following purposes.
 {¶ 47} "* * *
 {¶ 48} "(3) To terrorize, or to inflict serious physical harm on the victim or another."
 {¶ 49} Although the Ohio Revised Code does not define the word "terrorize," this Court has previously held that the term "terrorize" is a common word and means "to fill with terror or anxiety." See State v.McDougler, Cuyahoga App. No. 86152, 2006-Ohio-100. See, also, State v.Leasure, Lucas App. No. L-02-1207, 2003-Ohio-3987; State v. Carter, Franklin App. No. 01AP-531, 2002-Ohio-1347.
 {¶ 50} Here, the State presented evidence that defendant came up behind Skidmore, grabbed her around the neck and said he would "cut her" if she did not give him her purse. *Page 15 
 {¶ 51} We conclude that this evidence is sufficient to allow the jury to find the essential elements of kidnapping, particularly the "terrorize another" language, proven beyond a reasonable doubt. First, any jury could have found that defendant exerted force against Skidmore when he grabbed her around the neck. Next, any jury could have found that defendant restrained the liberty of Skidmore when he grabbed her around the neck. See State v. Wingfield (Mar. 7, 1996), Cuyahoga App. No. 69229 (the element of restraint is found where a person's freedom of movement is limited in any fashion for any period of time.) Finally, a reasonable jury could find that the act of grabbing Skidmore around the neck and threatening to cut her showed intent to terrorize. Accordingly, the trial court did not err by finding defendant guilty of kidnapping.
 {¶ 52} Defendant's fourth assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover from appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Court of Common Pleas to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. *Page 16 
 CHRISTINE T. McMONAGLE, J., and FRANK D. CELEBREZZE, JR., J., CONCUR. *Page 1