JOURNAL ENTRY AND OPINION
{¶ 1} Appellant, Marlon Lundy, appeals his convictions for felonious assault and having a weapon while under disability. After a thorough review of the record, and for the reasons set forth below, we affirm.
 {¶ 2} On April 4, 2007, a grand jury indicted appellant on three counts. Count One charged felonious assault under R.C. 2903.11(A)(1); Count Two charged felonious assault under R.C. 2903.11(A)(2); and Count Three charged having a weapon while under disability under R.C. 2923.13.
 {¶ 3} On October 30, 2007, voir dire began. On October 31, 2007, appellant waived his right to a jury, and then a bench trial began. On November 1, 2007, the trial court found appellant guilty on all counts and immediately sentenced him. After rendering its verdicts, the trial court proceeded directly to the sentencing phase. The trial court then found that the two counts of felonious assault merged as allied offenses and also merged the firearm specifications. The trial court sentenced appellant to three years on the gun specification, to be served prior to and consecutive to six years for felonious assault. The court also sentenced appellant to a concurrent term of three years for having a weapon while under disability. Appellant received an aggregate of nine years in prison.
 Pertinent Facts LaSondra Richardson {¶ 4} The facts that gave rise to this appeal began on November 29, 2006, when LaSondra Richardson ("the victim") went shopping with a friend, *Page 4 
Darnethea Brown ("the eyewitness"). As the pair approached a store at East 75th Street and Kinsman in Cleveland, the victim heard two gunshots. The victim then saw appellant on the sidewalk pointing a gun at her. The victim described the gun as silver with a white handle. The victim recognized appellant as someone from her neighborhood with the nickname "Peewee." As she looked at appellant, he shot her in the leg. She attempted to hide behind a car and continued to hear gunfire and bullets hit a car. The victim testified that when the police arrived, she told them that she had been shot by someone she knew as Peewee.
 {¶ 5} The victim further testified that in January or February 2007, she received a note from a neighbor that stated Peewee's real name is Marlon Lundy. She relayed this information to Cleveland Police Officer Michael Cox. Officer Cox was not the officer that worked on her case; rather, he worked off duty at the store at East 75th Street and Kinsman where the incident occurred. Officer Cox and the victim were acquaintances who had conversed with each other in the past.
 {¶ 6} The victim testified that, while she was on her way to work on April 13, 2007, she thought she saw appellant standing on a corner wearing an orange jacket. On April 15, 2007, the police informed her that they had arrested appellant, and she picked appellant out of a photo lineup.
 Darnethea Brown *Page 5 {¶ 7} The eyewitness testified at trial that she was shopping with the victim on the day of the incident and that she "ran for cover" when she heard gunshots. She testified that appellant was the attacker and that he had a silver gun. She stated that appellant was not shooting directly at her, but that he was waving the gun around. The eyewitness also recognized appellant from around the neighborhood. On April 15, 2007, the eyewitness identified appellant in a photo lineup.
 Officer Michael Cox {¶ 8} Officer Cox testified that he works at the grocery store at East 75th Street and Kinsman. He was not at work at the time of the incident; however, he later spoke with the victim, who informed him that the attacker's name was Peewee. In January 2007, the victim informed him that Peewee's real name is Marlon Lundy. One day in April, the victim called to tell Officer Cox that she had seen appellant standing on the corner, wearing an orange jacket. A few hours after speaking with the victim, Officer Cox saw appellant while he was being arrested by other police officers on outstanding warrants; appellant was wearing an orange jacket. Officer Cox recognized appellant as Marlon Lundy, asked him his name, and informed the arresting officers that he was wanted as a suspect in the November 2006 shooting.
 Detective Larry Russell *Page 6 {¶ 9} Cleveland Police Detective Larry Russell investigated the case in November 2006. He testified that his report did not indicate the victim told him the attacker's name was Peewee. It was not until April 2007 that he recalled learning that the attacker's nickname was Peewee. He testified about a 1999 police report that stated that appellant's nickname was Peewee. On April 15, 2007, Det. Russell put together a photo lineup for the victim and the eyewitness, and both women selected appellant from the photo lineup. Appellant told Det. Russell that "he didn't do it," and did not have a nickname of Peewee.
 Review and Analysis {¶ 10} Appellant brings this appeal, asserting two assignments of error for our review.
 Ineffective Assistance of Counsel {¶ 11} "I. Appellant was denied the effective assistance of counsel."
 {¶ 12} Appellant argues that he was denied effective assistance of counsel and alleges five specific instances that he believes demonstrate that his attorney was ineffective. These arguments are without merit.
 {¶ 13} In order to substantiate a claim of ineffective assistance of counsel, the appellant is required to demonstrate that: 1) the performance of defense counsel was seriously flawed and deficient; and 2) the result of the appellant's trial or legal proceeding would have been different had defense counsel provided *Page 7 
proper representation. Strickland v. Washington (1984), 466 U.S. 668,104 S.Ct. 2052, 80 L.Ed.2d 674; State v. Brooks (1986),25 Ohio St.3d 144, 495 N.E.2d 407.
 {¶ 14} In reviewing a claim of ineffective assistance of counsel, itmust be presumed that a properly licensed attorney executes his legal duty in an ethical and competent manner. State v. Smith (1985),17 Ohio St.3d 98, 477 N.E.2d 1128; Vaughn v. Maxwell (1965), 2 Ohio St.2d 299,209 N.E.2d 164.
 {¶ 15} Appellant alleges five instances that he believes demonstrate that his lawyer was ineffective. He argues that his attorney 1) failed to file a motion to suppress the witness identifications, 2) failed to call the arresting officers as witnesses, 3) failed to present the tape of the 911 call as evidence, 4) failed to object to three state exhibits, and 5) failed to request written witness statements. We address each instance in turn.
 Motion to Suppress/Witness identification {¶ 16} The crux of appellant's argument is that the victim's identification of him from the photo lineup was flawed because of two prior "cold stands." Therefore, he argues, his trial counsel was ineffective for failing to file a motion to suppress the identification. We find this argument unpersuasive.
 {¶ 17} "Failure to file a suppression motion does not constitute per se ineffective assistance of counsel." State v. Madrigal,87 Ohio St.3d 378, 389, 2000-Ohio-448, 721 N.E.2d 52, quoting Kimmelman v.Morrison (1986), 477 U.S. 365, 384, 106 S.Ct. 2574, 2587,91 L.Ed.2d 305, 325. "Failure to file a motion to *Page 8 
suppress constitutes ineffective assistance of counsel only if, based upon the record, the motion would have been granted." State v.Kuhn, 9th Dist. No. 05CA008859, 2006-Ohio-4416, at ¶ 11, citingState v. Robinson (1996), 108 Ohio App.3d 428, 433, 670 N.E.2d 1077.
 {¶ 18} After a review of the record, we find that a motion to suppress would not have been granted; therefore, trial counsel was not ineffective for failing to file such a motion.
 {¶ 19} Appellant suggests that the victim's photo identification of him as the attacker was tainted by two previous cold stands. He describes the scene of his arrest, where the victim saw him in the police car, and the instance where the victim saw him on the sidewalk on her way to work, as cold stands. First, we note that neither incident constitutes a cold stand. "In a `cold stand,' a victim or witness, in a relatively short time after the incident, is shown only one person and asked whether they can identify the perpetrator of the crime." State v.Butler, Cuyahoga App. No. 89755, 2008-Ohio-1924, citing State v.Scott (May 11, 2000), Cuyahoga App. No. 76171. Neither of the alleged sightings of appellant could be considered a cold stand. Both sightings occurred months after the attack, and the victim was never asked if she could identify the perpetrator. Further, according to the transcript, the victim and Officer Cox testified that the victim was notpresent at the scene of appellant's arrest. *Page 9 
 {¶ 20} Regardless of whether the incidents are cold stands, we find that trial counsel was not ineffective because there is no evidence that the photo lineup identifications themselves were unreliable.
 {¶ 21} Pretrial identification may be subject to suppression when it was unnecessarily suggestive and unreliable under the totality of the circumstances. State v. Davis, 76 Ohio St.3d 107, 112, 1996-Ohio-414,666 N.E.2d 1099. Further, "no due process violation will be found where an identification does not stem from an impermissibly suggestive confrontation, but is instead the result of observations at the time of the crime." Id.
 {¶ 22} Appellant does not argue that the photo lineup was unnecessarily suggestive (and there is no evidence to suggest that the lineup was suggestive). The identification here was a result of the victim's observations at the time of the crime; therefore, there could not have been a due process violation. See Davis, supra.
 {¶ 23} From the evidence, it appears that the identification was reliable under the totality of the circumstances. For instance, the victim testified that she recognized her attacker during the attack as Peewee from the neighborhood; that he shot at her from 20 to 30 feet away in daylight; and that he was in her direct line of sight, unobstructed by anything else. The eyewitness also testified that she recognized appellant as Peewee while he was shooting at them. Clearly, from the testimony, the appellant was immediately recognized by the victim; *Page 10 
therefore, there could be no due process violation. Accordingly, we find that the identification was reliable under the totality of the circumstances.
 Witnesses {¶ 24} Appellant argues that trial counsel was ineffective for failing to call the arresting officers as witnesses. He alleges there was some type of impermissible "cold stand," and that the arresting officers should have testified about it. As discussed above, we find there were no cold stands and that the photo identification was reliable under the totality of the circumstances. Both the victim and the eyewitness properly identified appellant during their attack and from the photo lineup; therefore, there was no need for trial counsel to call the officers as witnesses. Further, the use of trial tactics, which includes calling witnesses, does not constitute a denial of effective assistance of counsel. State v. Briscoe (Nov. 22, 2000), Cuyahoga App. No. 77832. Accordingly, we find that trial counsel was not ineffective by failing to call the arresting officers as witnesses.
 911 Tape {¶ 25} Appellant next argues that his attorney should have tried to admit a 911 tape into evidence because that tape would show that more than one male was shooting a gun during the incident, which would call the identification of the perpetrator into question. Appellant believes that the fact that other males were shooting would exonerate him. We do not find that trial counsel's failure to *Page 11 
admit this evidence rises to the level of ineffective assistance because it would not have changed the outcome of the case. The victim testified that she did not remember seeing other shooters, and it was definitely appellant who was shooting at her. Even if other shooters existed, it does not change the fact that the victim saw appellant shooting at her. Accordingly, we do not find that trial counsel failed by not admitting the 911 tape.
 Exhibits {¶ 26} Appellant argues that trial counsel was ineffective because he failed to object to the admission of three state's exhibits. The exhibits were police reports that confirmed appellant used the nickname Peewee. Two of the reports were alias inquiry reports and one was a 1999 report that documented appellant's drug abuse arrest in which Peewee was listed as a nickname.
 {¶ 27} We find that trial counsel should not have objected to this evidence because any police record of appellant's nicknames was admissible as a hearsay exception under Evid. R. 803(6). Under Evid. R. 803(6), a report "made at or near the time by *** a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make" that report, is not excluded by the hearsay rule. Clearly, a police report is made at the time of an incident by an officer (a person with knowledge) and kept in the course of regular business. Accordingly, we find that *Page 12 
trial counsel did not fail when he allowed the admission of the state's exhibits without objection.
 Statements {¶ 28} Appellant alleges that his trial counsel was ineffective for failing to inspect the written statements of the victim and the eyewitness for inconsistencies. It is appellant's burden to prove ineffective assistance, and on this matter appellant has not alleged any evidence that the written statements were inconsistent. Accordingly, we find that trial counsel did not fail when he failed to inspect the written statements.
 {¶ 29} We find that none of the five alleged trial counsel errors rise to the level of ineffective assistance of counsel. Accordingly, appellant's first assignment of error is overruled.
 Manifest Weight {¶ 30} "II. The trial court's verdicts of guilty were against the manifest weight of the evidence."
 {¶ 31} Appellant specifically argues that his convictions were against the manifest weight of the evidence. More specifically, he alleges that "there was absolutely no evidence that [he] was the shooter, other than Ms. Richardson and her friend, Ms. Bowen." This argument is without merit.
 {¶ 32} Article IV, Section 3(B)(3) of the Ohio Constitution authorizes appellate courts to assess the weight of the evidence independently of the fact-finder. "The *Page 13 
court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether in resolving conflicts in the evidence, the factfinder clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Martin (1983), 20 Ohio App.3d 172, 485 N.E.2d 717.
 {¶ 33} Appellant contends that his convictions are against the manifest weight because only the victim and the eyewitness identified him. In appellant's first assignment of error, we addressed the same errors that appellant alleges here. For instance, he argues that his convictions are against the manifest weight because a 911 call showed that more than one individual was shooting. Regardless of what the 911 tape would have revealed, it is clear from the victim's testimony that she specifically saw appellant shooting at her.
 {¶ 34} Appellant argues that his convictions are against the manifest weight due to unreliable photo identifications. Appellant contends that the victim's photo identification is unreliable because of two cold stands she participated in earlier. Again, there were no cold stands in this case and, even if there were, we have already found that the identifications were reliable.
 {¶ 35} Appellant again argues that the police records identifying his nickname were inadmissible. We have already found that the records were admissible. *Page 14 
 {¶ 36} The identifications of appellant by the victim and the eyewitness were reliable; therefore, appellant's conviction is not against the manifest weight. We cannot say that the trial judge clearly lost his way and created a manifest miscarriage of justice. Accordingly, appellant's second assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 KENNETH A. ROCCO, P.J., and PATRICIA ANN BLACKMON, J., CONCUR *Page 1