[Cite as *State v. Lewis*, 2019-Ohio-3660.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                          :

     Plaintiff-Appellee,          :

                                            No. 107875

     v.                                    :

DESHUN LEWIS,                           :

     Defendant-Appellant.         :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:**  AFFIRMED IN PART, VACATED IN PART,
                      AND REMANDED
**RELEASED AND JOURNALIZED:**  September 12, 2019

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case Nos. CR-17-616415-A and CR-18-626037-A

---

*Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting
Attorney, and Caitlin E. Monter and Yasmine M. Hasan,
Assistant Prosecuting Attorneys, *for appellee.*

Joseph V. Pagano, *for appellant.*

FRANK D. CELEBREZZE, JR., J.:

{¶ 1} Defendant-appellant, Deshun Lewis ("appellant"), brings the instant appeal challenging his conviction and sentence.  Specifically, appellant argues his conviction for having a weapon while under disability was not based on sufficient

evidence and against the manifest weight of the evidence, and the trial court erred in imposing consecutive sentences. After a thorough review of the record and law, this court affirms part, vacates in part, and remands for further proceedings consistent with this opinion.

## I. Factual and Procedural History

{¶ 2} Appellant appeals from two criminal cases. In Cuyahoga C.P. No. CR-17-616415-A ("616415"), on June 12, 2017, appellant pled guilty to carrying a concealed weapon, a fourth-degree felony, receiving stolen property, a fourth-degree felony, trafficking — heroin, a fourth-degree felony, drug possession — cocaine, a fifth-degree felony, and possessing criminal tools, a fifth-degree felony. On July 18, 2017, the trial court sentenced appellant to community control sanctions for a period of two years.

{¶ 3} On February 21, 2018, appellant was charged in a seven-count indictment for the following offenses in Cuyahoga C.P. No. CR-18-626037-A ("626037"): four counts of felonious assault, in violation of R.C. 2903.11(A)(2), second-degree felonies; one count of improperly discharging a firearm into a habitation, in violation of R.C. 2923.161(A)(1), a second-degree felony; one count of improperly discharging a firearm on or near a prohibited premises, in violation of R.C. 2923.162(A)(3), a third-degree felony; and one count of having weapons while under disability, in violation of R.C. 2923.13(A)(3), a third-degree felony. All counts, except the having-weapons-while-under-a-disability count, had accompanying one-

and three-year firearm specifications.  Appellant pled not guilty to these offenses and the matter proceeded to trial.

{¶ 4} The seven-count indictment in 626037 related to a shooting on Cleveland's near west side in the area of West 65th Street and Gutherie Avenue.  On the night of February 11, 2018, Jose Rosario dropped his girlfriend, Jordan Massey,[1] off at her house.  As Massey was on the front porch, two individuals rushed up towards Massey, and fired several shots at her.  As Massey heard the gunshots, she fled back to Rosario's vehicle.  Rosario and Massey then drove off from the area.  Neither Massey nor Rosario were struck by any bullets.  However, a two-year-old child, asleep in her bedroom, was struck and grazed in the buttocks by one of the bullets.  The bullet entered through the exterior wall of the child's home, and struck the toddler as she lay in bed.  Responding officers recovered the bullet on the toddler's bed.  Officers searching the scene of the shooting also retrieved shell casings a few houses down from Massey's home.

{¶ 5} Massey called 911 and stated to dispatch that a "black guy ran out from three houses down and starting shooting."  Massey indicated that two black males were shooting at her, each dressed in all-black clothing.

{¶ 6} Cleveland Police Officer Steve Sistak responded to the scene of the shooting and spoke with Rosario and Massey.  Massey told Officer Sistak that she

---

[1] At the time of the incident, Massey provided her sister's name (Jayme Step-Tuel) to responding officers in an effort to avoid being arrested.  Massey had an active arrest warrant for a previous probation violation.  (Tr. 498.)  Massey was charged as a result of providing her sister's name to officers and was convicted of forgery in Cuyahoga C.P. No. CR-18-626680-A.

exited Rosario's vehicle, walked up to the front porch, and two males rushed up on her. Rosario stated that these two individuals appeared to come out from the backyard of a house, a couple doors down from Massey's home. Massey and Rosario stated that one of the males, whom they both knew as "D," fired multiple rounds at Massey. Massey further stated that as she was running back to Rosario's vehicle, additional shots were fired at her. Rosario also stated to Officer Sistak that he owed appellant money for marijuana he had purchased from appellant.

{¶ 7} Rosario and Massey knew "D" to drive around in three vehicles and they provided descriptions of each of these vehicles to Officer Sistak. One of the vehicles, a Ford Taurus, had a "1-800" decal on the rear window of the vehicle. Officer Sistak provided descriptions of the three vehicles to dispatch so that a "be on the lookout" would be broadcasted relating to the three vehicles.

{¶ 8} Appellant's Ford Taurus was spotted on Cleveland's east side approximately thirty minutes after the shooting was reported. Cleveland officers initiated a traffic stop of the vehicle. Arresting officers described appellant as wearing "[a] black — a jacket kind of a puffyish jacket, black hat, a scarf, and I believe it was black pants as well." (Tr. 599-600.) Appellant also had two cell phones in his possession. Appellant was the sole occupant of the vehicle.

{¶ 9} Officers back at the scene of the shooting were informed that appellant was stopped driving a vehicle matching the descriptions provided by Rosario and Massey. At this time, Detective Elliot Landrau, who was investigating the scene of the shooting, transported Rosario to the east side of Cleveland to perform a "cold

stand"[2] identification of appellant. As a result of the cold stand, Rosario identified appellant stating "that's D."

{¶ 10} Officers then arrested appellant and transported him to Cleveland city jail. Officers conducted a gunshot residue ("GSR") test on both of appellant's hands in an effort to determine if he was the shooter. The GSR test kit came back positive for gunshot residue.

{¶ 11} Rosario and Massey were apparently uncooperative with the investigation and during the prosecution of the shooting. In order to secure Rosario's and Massey's testimony at trial, the trial court issued "material witness warrants."

{¶ 12} On September 25, 2018, the matter proceeded to a jury trial. Appellant's counsel made an oral motion to the court on the morning of trial to bifurcate the having-weapons-while-under-a-disability count and elected to have that count tried to the bench. The trial court granted the oral motion. The remaining six counts were presented to the jury.

{¶ 13} On October 3, 2018, the jury returned not guilty verdicts on all six counts. The trial court found appellant guilty on the having-weapons-while-under-a-disability count. The trial court scheduled the matter for sentencing on October 9, 2018.

---

[2] "In a 'cold stand,' a victim or witness, in a relatively short time after the incident, is shown only one person and asked whether they can identify the perpetrator of the crime." *State v. Butler*, 8th Dist. Cuyahoga No. 89755, 2008-Ohio-1924, ¶ 11, citing *State v. Scott*, 8th Dist. Cuyahoga No. 76171, 2000 Ohio App. LEXIS 2023 (May 11, 2000).

{¶ 14} On October 9, 2018, the trial court imposed a prison sentence of three years on the having-weapons-while-under-a-disability count. The trial court also found appellant in violation of his community control sanctions in 616415 and sentenced him to an aggregate prison term of 18 months to be served consecutive to 626037, for a total aggregate prison sentence of four and one-half years.

{¶ 15} Appellant thereafter filed the instant appeal from both his criminal matters and assigned three assignments of error for our review.

I.      Appellant's conviction was not supported by sufficient evidence and the trial court erred by denying his motion for acquittal and by finding it [constituted] a probation violation.

II.     The conviction was against the manifest weight of the evidence and the court erred by finding it constituted a probation violation

III.    Appellant's sentence is contrary to law because the record does not support the imposition of consecutive sentences.

## II. Law and Analysis

### A. Sufficiency

{¶ 16} In appellant's first assignment of error, he argues that his conviction for having weapons while under disability was not supported by sufficient evidence. Appellant similarly argues that the trial court erred when it denied his Crim.R. 29 motion for judgment of acquittal.

> A Crim.R. 29 motion challenges the sufficiency of the evidence. The test for sufficiency requires a determination of whether the prosecution met its burden of production at trial. *State v. Bowden*, 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598, ¶ 12. An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State*

*v. Murphy*, 91 Ohio St.3d 516, 543, 747 N.E.2d 765 (2001). "'The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *State v. Walker*, 150 Ohio St.3d 409, 2016-Ohio-8295, 82 N.E.3d 1124, ¶ 12, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

*State v. Keller*, 8th Dist. Cuyahoga No. 106196, 2018-Ohio-4107, ¶ 19.

{¶ 17} In support of his sufficiency argument, appellant contends that the testimony was "full of inconsistences and the victim/eyewitnesses had no credibility." To this end, appellant relies heavily on the lack of evidence identifying appellant as the shooter. This argument pertains to the manifest weight of the evidence, rather than the sufficiency of the evidence. *See State v. Williams*, 8th Dist. Cuyahoga No. 98528, 2013-Ohio-1181, ¶ 27 (this court does not consider the credibility of the witnesses when reviewing a challenge to the sufficiency of the evidence). As such, we will disregard appellant's arguments in this regard.

{¶ 18} The only discernible argument presented by appellant that specifically addresses a sufficiency challenge relates to the GSR test and the fact that no gun was found. To this end, appellant argues that the "fact that appellant's hands tested positive for gunshot residue, standing alone, is insufficient to sustain the conviction beyond a reasonable doubt." We do not agree.

{¶ 19} As a general matter, physical evidence is not required to sustain a conviction. *State v. Lopez*, 8th Dist. Cuyahoga No. 94312, 2011-Ohio-182, ¶ 62, citing *Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph one of the syllabus. "Proof of guilt may be made by circumstantial evidence as well as by real evidence

and direct or testimonial evidence or any combination of these three classes of evidence." *Jenks* at 272. Thus, the fact that no gun was found in the instant case is in no way dispositive.

{¶ 20} Appellant was convicted of having weapons while under disability in violation of R.C. 2923.13(A)(3), which provides that no person shall knowingly have, acquire, carry, or use a firearm if the person has been convicted of a felony offense involving the illegal possession, use, sale, distribution, or trafficking of any drug of abuse.

{¶ 21} First, we note that the parties' stipulated to appellant's prior conviction for drug trafficking in 616415. Thus, there was clearly sufficient evidence establishing that appellant was in fact under a disability prohibiting him from carrying a firearm.

{¶ 22} Furthermore, regarding whether there was sufficient evidence to prove that appellant knowingly had, acquired, carried, or used a firearm, we note that the state was not required to prove that appellant directly or actually possessed a firearm. *State v. Robinson*, 8th Dist. Cuyahoga No. 105667, 2018-Ohio-285, ¶ 22. "[T]he state may demonstrate an individual has dominion and control over the firearm by proving constructive possession of the firearm." *State v. Carson*, 8th Dist. Cuyahoga No. 104998, 2017-Ohio-7243, ¶ 17, citing *State v. Easterly*, 8th Dist. Cuyahoga No. 94797, 2011-Ohio-215, ¶ 24, citing *State v. Davis*, 8th Dist. Cuyahoga No. 93844, 2010-Ohio-5123.

{¶ 23} Appellant specifically argues that the positive test for GSR does not specifically establish that he knowingly had, acquired, carried, or used a firearm. In support of this argument, appellant states that the GSR could be explained by virtue of "transfer residue" as explained by Curtiss Jones, a supervisor of the trace evidence department at the Cuyahoga County Medical Examiner's Office.

{¶ 24} Jones's testimony detailed his testing of the GSR kit submitted by the Cleveland Police Department. Jones testified that the GSR test revealed two particles that were indicative of "gunshot primer residue." Jones stated that gunshot primer residue is a result of a gun having been fired. Jones further explained that,

> Just that the two particles containing lead, barium, and antimony are characteristic of gunshot primer residue, and then the two particles containing the lead and antimony are indicative of gunshot residue. But the finding of multiple particles, both characteristic and indicative, allows the conclusion that the individual who samples were collected from either fired a gun, they were in close proximity to a gun at the time it was fired, or there was a transfer of residue from one surface to the person's hands secondarily.
>
> An example being, the gun from previous firings will have gunshot primer residue on it already. So a person could pick up the gun, handle it, not shoot it, and have residue from a previous firing transferred from the gun to the hand collected by GSR analysis.

(Tr. 650-651.)

{¶ 25} In considering Jones's testimony in this regard, it appears that no single probability has any greater weight than the other probabilities. In this regard, it could be just as likely that appellant fired a gun, was simply in close proximity to a gun at the time it was fired, or the residue could have been transferred from one surface to appellant's hands. However, considering the additional evidence, we are

not persuaded by appellant's argument that the evidence suggests that the GSR was transferred to appellant's hands from another surface. This additional evidence is sufficient to establish that appellant constructively possessed a firearm.

{¶ 26} During the investigation, two officers had personal contact with appellant and appellant's hands as he was handcuffed. It appears from these officers' testimony that appellant was handcuffed and then uncuffed by both officers. Both of these officers testified that they had not fired a gun on that particular day. Additionally, the close proximity in time of the shooting and appellant's arrest suggests that the probability that GSR was transferred to appellant is unlikely.

{¶ 27} Appellant was arrested on Cleveland's east side approximately 30 minutes after the shooting that occurred on Cleveland's west side. An approximate travel time between these two locations would be 15-20 minutes. Further, Rosario and Massey stated that the two males who rushed up on Massey were dressed in all black, and appellant was dressed in all black when officers conducted the traffic stop of his vehicle. As such, the evidence does not support appellant's contention that GSR was transferred to appellant's hands from another surface.

{¶ 28} Moreover, appellant's contention that two hours had passed from the time of the shooting until he was tested for GSR, does not necessarily support his contention that his conviction was based on insufficient evidence. Jones testified that "the longer the time period between the shooting event and the collection [of the GSR test kit] the *less* likely you are to recover gunshot primer residue."

(Emphasis added.) (Tr. 647.) In this respect, the trial court was able to consider that officers came into contact with appellant just 30 minutes after the shooting. *See, e.g., State v. Nelson*, 2017-Ohio-5568, 93 N.E.3d 472, ¶ 45 (8th Dist.) (where this court affirmed a defendant's conviction for having weapons while under a disability where no GSR was found on the defendant, but a witness testified that the defendant pointed a gun at him).

{¶ 29} Our conclusion is consistent with this court's previous opinion in *State v. Ladson,* 8th Dist. Cuyahoga No. 104091, 2016-Ohio-7781. In *Ladson,* this court noted that the defendant "tested positive for gunshot residue, which supports the inference that he fired the gun at the victim as she stood in the apartment[.]" *Id.* at ¶ 15. Thus, the presence of GSR in the instant case is an inference to be drawn by the trier of fact that suggests that the individual either (1) fired a gun, (2) was in close proximity to a gun at the time it was fired, or (3) the residue was transferred from one surface to the individual hands.

{¶ 30} After a review of the evidence, we note that GSR was found on appellant's hands, and appellant was stopped 30 minutes after the shooting and was wearing all-black clothing. Based on these facts, we find that there existed sufficient evidence from which to draw an inference that appellant, at the very least, had constructively possessed a firearm.

{¶ 31} After viewing the evidence in a light most favorable to the prosecution, we find that the collective evidence and testimony, if believed, was sufficient to establish that appellant had, acquired, carried, or used a firearm. As such, we find

that appellant's conviction for having weapons while under a disability is based on sufficient evidence.

{¶ 32} In his first assignment of error, appellant also contends that "[b]ecause the evidence was insufficient to convict appellant of having weapons while under [a] disability and because the jury found him not guilty of every other charge and specification, the trial court erred by finding appellant had violated his probation in [616415]." Appellant has not complied with App.R. 16(A)(3) and (4), and has failed to incorporate his sufficiency argument relating to the trial court's finding that his conviction constituted a probation violation in a separate assignment of error. Thus, we decline to address appellant's argument that the trial court did not have sufficient evidence to find that appellant's conviction for having weapons while under a disability constituted a violation of appellant's probation in 616415.

{¶ 33} Accordingly, appellant's first assignment of error is overruled.

### B. Manifest Weight

{¶ 34} In his second assignment of error, appellant also contends that his conviction for having weapons while under disability was against the manifest weight of the evidence.

{¶ 35} A manifest weight challenge questions whether the state met its burden of persuasion. *Bowden*, 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598, at ¶ 12. A reviewing court "'weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts

in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). "A conviction should be reversed as against the manifest weight of the evidence only in the most 'exceptional case in which the evidence weighs heavily against the conviction.'" *State v. Burks*, 8th Dist. Cuyahoga No. 106639, 2018-Ohio-4777, ¶ 47, quoting *Thompkins* at 387.

{¶ 36} In support of his manifest weight argument, appellant essentially challenges again the credibility of the witnesses identifying him as the shooter. However, in order to convict appellant of having weapons while under disability, the state did not have to prove that appellant was the shooter. Indeed, the state had to prove that appellant knowingly had, acquired, carried, or used a firearm.

{¶ 37} Nevertheless, although this court reviews credibility when considering the manifest weight of the evidence, "[w]e are cognizant that determinations regarding the credibility of witnesses and the weight of the testimony are primarily for the trier of fact." *State v. Bradley*, 8th Dist. Cuyahoga No. 97333, 2012-Ohio-2765, ¶ 14, citing *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967). The trier of fact is uniquely situated to view the witnesses' demeanor, gestures, facial expressions, and voice inflections. "'Because the trier of fact sees and hears the witnesses and is particularly competent to decide "whether, and to what extent, to credit the testimony of particular witnesses," we must afford substantial deference to its determinations of credibility.'" *Barberton v. Jenney,* 126 Ohio St.3d 5, 2010-

Ohio-2420, 929 N.E.2d 1047, ¶ 20, quoting *State v. Konya*, 2d Dist. Montgomery No. 21434, 2006-Ohio-6312, ¶ 6, quoting *State v. Lawson*, 2d Dist. Montgomery No. 16288, 1997 Ohio App. LEXIS 3709 (Aug. 22, 1997).

{¶ 38} Appellant also argues that the inconsistencies in Rosario's and Massey's testimony supports his argument that his conviction was against the manifest weight of the evidence. Undeniably, Rosario's and Massey's testimony was inconsistent with their initial statements to investigating officers. For instance, Rosario initially stated to officers that the shooting occurred in the middle of the street on Gutherie Avenue. However, officers did not recover shell casings in the street — casings were recovered a few houses down in a neighbor's front yard. Rosario initially stated to officers that he owed appellant money for marijuana. At trial, Massey testified that Rosario was buying heroin from appellant. Massey also told officers that "D" was shooting at her. However, she testified at trial that she never saw who was shooting at her. Massey also failed to identify appellant in a photo lineup.

{¶ 39} Regardless of these clear inconsistencies, the state presented sufficient evidence that a shooting occurred on the night of February 11, 2018. Officers searching the scene of the shooting were able to find shell casings in the front yard of a house a few doors down from Massey's home. Furthermore, as a result of the cold stand, Rosario identified appellant to responding officers as one of the two males who shot at Massey, stating to officers "that's D."

{¶ 40} Furthermore, there existed ample evidence that appellant was involved in the shooting. Rosario also testified that a cell phone number that Rosario associated with appellant sent Rosario a text message immediately following the shooting stating "I spared your girlfriend's life." Although this text message was deleted by Rosario, because it contained reference to a previous transaction of heroin, Rosario testified that he received the text message from whom Rosario believed to be appellant. Massey also testified that the cell phone number belonged to "D," and that the number was saved in Rosario's cell phone as "D."

{¶ 41} Appellant also argues that the lack of physical evidence connecting him to the shooting demonstrates that his conviction for having weapons while under disability was against the manifest weight of the evidence. To this end, appellant specifically argues that "[n]o gun was found. There is no DNA or fingerprints linking appellant to the scene. [Appellant] did not have a gun in his possession. * * * two hours passed between the incident and the GSR test." Appellant's brief at 21.

{¶ 42} To the extent that appellant argues that there existed no physical evidence, this is simply not true. The GSR particles on appellant's hand recovered from the GSR kit could undoubtedly be construed as physical evidence. Nevertheless, we again note that the state was not required to present physical evidence. *Lopez*, 8th Dist. Cuyahoga No. 94312, 2011-Ohio-182, at ¶ 62, citing *Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph one of syllabus.

{¶ 43} Based on our review of the evidence, we find that appellant's conviction was not against the manifest weight of the evidence. We cannot say that this is "an exceptional case" in which the trial court clearly lost its way and created such a manifest miscarriage of justice that appellant's conviction was against the manifest weight of the evidence. *Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541. Appellant's convictions are not against the manifest weight of the evidence simply because the trial court chose to believe the state's version of the events and the jury did not believe the state's version of events on different charges with different elements. The trial court, as the trier of fact, had sufficient information, and was in the best position to weigh the credibility of the witnesses. Furthermore, the trial court "was free to believe all, part, or none of the testimony of each witness." *State v. Colvin*, 10th Dist. Franklin No. 04AP-421, 2005-Ohio-1448, ¶ 34; *State v. Smith*, 8th Dist. Cuyahoga No. 93593, 2010-Ohio-4006, ¶ 16.

{¶ 44} Accordingly, appellant's second assignment of error is overruled.

### C. Sentence

{¶ 45} In his third assignment of error, appellant argues that the trial court did not make the requisite findings in imposing consecutive sentences. Appellant also argues that the trial court failed to comply with the purposes and principles of sentencing as required by R.C. 2929.11 and 2929.12.

{¶ 46} R.C. 2929.14(C)(4) provides that in order to impose consecutive sentences, the trial court must find that consecutive sentences are (1) necessary to protect the public from future crime or to punish the offender, (2) that such

sentences would not be disproportionate to the seriousness of the conduct and to the danger the offender poses to the public, and (3) that one of the following applies:

(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under postrelease control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

{¶ 47} Conformity with R.C. 2929.14(C)(4) requires the trial court to make the statutory findings at the sentencing hearing, which means that "'the [trial] court must note that it engaged in the analysis' and that it 'has considered the statutory criteria and specifie[d] which of the given bases warrants its decision.'" *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, ¶ 26, quoting *State v. Edmonson*, 86 Ohio St.3d 324, 326, 715 N.E.2d 131 (1999). To this end, a reviewing court must be able to ascertain from the record evidence to support the trial court's findings. *Bonnell* at ¶ 29. "A trial court is not, however, required to state its reasons to support its findings, nor is it required to recite verbatim the statutory language, 'provided that the necessary findings can be found in the record and are incorporated in the sentencing entry.'" *State v. Sheline*, 8th Dist. Cuyahoga No. 106649, 2019-Ohio-528, ¶ 176, quoting *Bonnell* at ¶ 37.

{¶ 48} Compliance with this statute "requires separate and distinct findings in addition to any findings relating to purposes and goals of criminal sentencing." *State v. Venes*, 2013-Ohio-1891, 992 N.E.2d 453, ¶ 17 (8th Dist.), citing *State v. Jones*, 93 Ohio St.3d 391, 399, 754 N.E.2d 1252 (2001). The failure to make these findings is "contrary to law." *Id.* at ¶ 12.

{¶ 49} In the instant matter, the trial court made the following findings on the record at the sentencing hearing.

> [Appellant], on [626037], a 36-month sentence consecutive to the time I'm about to impose on [616415]. This is not disproportionate to the crime that occurred here. You were on community control in [616415], when you clearly were still involved in the drug trade and were involved in the shooting. That is going to run consecutive to 616415. On that case, I'm going to sentence you on count 1, which is carrying a concealed weapon count, to 18 months. Receiving stolen property, run concurrent to count 1 for another 18 months. Drug trafficking I will run concurrent as well for 18 months. And the drug possession in count 6 and the possessing criminal tools I will sentence you to 12 months on all counts and run them consecutive. So 18 months on 616415 and 36 months on case 626037. You will be given credit for time served.
>
> * * *
>
> I do note that in case 594229, you pled guilty to receiving stolen property, a fifth-degree felony. I will factor that prior conviction into my sentencing consideration.

(Tr. 833-835.)

{¶ 50} Appellant argues that the trial court only made one finding under the "disproportionate" prong. We agree.

{¶ 51} At the sentencing hearing, the trial court discussed appellant's criminal conduct, highlighting what the trial court believed to be appellant's involvement in the shooting based on the evidence presented at trial. The court also

noted that the evidence presented demonstrated continued drug trafficking by appellant. However, the only proportionality finding the trial court made was that a consecutive sentence was "not disproportionate to the crime that occurred[.]" The trial court did not find that consecutive sentences were not disproportionate to the danger appellant poses to the public.

{¶ 52} In our review, we find that the trial court also failed to find that consecutive sentences were necessary to protect the public from future crime or to punish appellant as required by R.C. 2929.14(C)(4). However, the trial court did make the third requisite finding concluding that at least one of the factors in R.C. 2929.14(C)(4), subsection (a), (b), or (c) applied. Specifically, the trial court found that offense while under community control sanctions, (a), and that appellant had a prior conviction for receiving stolen property, arguably also finding under (c). The trial court also failed to incorporate its findings in either sentencing journal entry as required by *Bonnell*.

{¶ 53} Lastly, we note that the state contends that it can be inferred that the trial court meant to encompass the required finding, however, we are not persuaded by this contention. In support of its argument in this regard, the state further contends that the trial court need not use "magic words." However, in the instant case, the trial court simply neglected to make the required findings. As this court has previously noted, R.C. 2929.14(C)(4),

> clearly requires specific findings for the imposition of consecutive sentences, those findings must be entered at the time the court orders sentences to be served consecutively. What we mean by this is that

regardless of what the trial judge might say during sentencing regarding the purposes and goals of criminal sentencing, compliance with R.C. 2929.14(C)(4) requires separate and distinct findings in addition to any findings relating to purposes and goals of criminal sentencing.

*Venes*, 2013-Ohio-1891, 992 N.E.2d 453, at ¶ 17. "If the word 'findings' is to have any meaning at all, it means nothing less than the court must 'engage[ ] in the required analysis and select[ ] the appropriate statutory criteria' before ordering sentences to be served consecutively." *Id.*, quoting *Edmonson*, 86 Ohio St.3d at 326, 715 N.E.2d 131. These required findings were not made in this case.

{¶ 54} Accordingly, appellant's sentences in 626037 and 616415 are vacated, and the case is remanded for resentencing for the trial court to consider whether consecutive sentences are appropriate under R.C. 2929.14(C)(4) and, if so, to make the required findings on the record and incorporate those findings in the sentencing journal entry in accordance with *Bonnell*.

{¶ 55} Appellant's third assignment of error is sustained.

{¶ 56} Appellant also argues that the trial court failed to comply with the purposes and principles of sentencing as required by R.C. 2929.11 and 2929.12. Based on our resolution of the trial court's imposition of consecutive sentences, appellant's arguments in this regard are moot.

### III. Conclusion

{¶ 57} Appellant's conviction for having weapons while under disability was not based on insufficient evidence and was not against the manifest weight of the

evidence. The trial court did not make the requisite findings in imposing consecutive sentences.

{¶ 58} Appellant's conviction is affirmed. The trial court's sentence is vacated, and the matter is remanded for sentencing in accordance with this opinion.

It is ordered that appellant and appellee share the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
FRANK D. CELEBREZZE, JR., JUDGE

EILEEN T. GALLAGHER, P.J., and
KATHLEEN ANN KEOUGH, J., CONCUR